BEFORE THE BOARD OF ADJUSTMENT OF THE
CITY OF COTTLEVILLE, MISSOURI

In re: Stop Work Order )
Harmony Pointe Project )
5440 Highway N, Cottleville, MO 63304 )
)
City of Cottleville, MO )
Respondent )
)

## THE RESPONDENT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

### INTRODUCTION

On June 7, 2023, Appellant Harmony Pointe, LLC (hereinafter, "Harmony") filed an appeal with the City of Cottleville Board of Adjustment (the "Board of Adjustment"), contesting a Stop Work Order issued on May 19, 2023 (the "Stop Work Order") by the City of Cottleville, Missouri (hereinafter, "City"), regarding the project commonly known as Harmony Pointe consisting of mixed-use multiple family dwellings and commercial entities (the "Project"), requesting the Board of Adjustment to rescind the Stop Work Order (the "Appeal"). The Board of Adjustment conducted a hearing to consider the Appeal on July 20, 2023, and at such hearing, all parties were given an opportunity to be heard and to present evidence.

The Board of Adjustment makes its findings based upon the following:

1. Harmony's Notice of Appeal dated June 7, 2023, and all exhibits attached thereto;

2. The Respondent's Brief filed by the City, and all exhibits attached thereto;

3. The Applicant's Reply Brief, and all exhibits attached thereto;

4. The Respondent's Proposed Findings of Fact and Conclusions of Law, and all exhibits attached thereto;

5. The sworn testimony of all witnesses provided at the hearing;

6. The Parties' Stipulated Exhibit List, a copy of which is on file in the Office of the City Clerk and incorporated by reference herein;

7. The Parties' Joint Stipulated Statement of Facts, a copy of which is on file in the Office of the City Clerk and incorporated by reference herein (the "Stipulated Facts"); and



8. The Municipal Code of the City of Cottleville, Missouri, a copy of which is on file in the Office of the City Clerk and incorporated by reference herein (the "Municipal Code").

(All capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the documents referenced above).

## FINDINGS OF FACT

1. The Board of Adjustment hereby adopts and accepts the Stipulated Facts, in whole, as part of its Findings of Fact.

2. Construction under the Final Plan and related to the Project had not begun on or before May 18, 2023.

3. The Final Plan expired on May 18, 2023 and is of no further force and effect.

4. The Second Conditional Use Permit expired on June 13, 2021 and is of no further force and effect.

5. The Second Certificate of Appropriateness expired on October 7, 2022 and is of no further force and effect.

6. The Building Permit expired on May 6, 2023 and is of no further force and effect.

7. The City issued the Stop Work Order in compliance with the requirements of the Municipal Code.

8. The Stop Work Order is valid.

## CONCLUSIONS OF LAW

### I.   *Construction Has Not Begun*

A. The term "construction," is not defined in the P.U.D. Ordinance.

B. When a term is undefined, "[t]he word's dictionary definition supplies its plain and ordinary meaning." *Hoffman v. Van Pak Corp.*, 16 S.W.3d 684, 688 (Mo. App. E.D. 2000).

C. Black's Law Dictionary defines "construction," in pertinent part, as "[t]he act of building by combining or arranging parts or elements; the thing so built." *Construction*, Black's Law Dictionary (11th ed. 2019).

D. Merriam-Webster's dictionary defines, "construct" as "to make or form by combining or arranging parts or elements: build." *Construct*, Merriam-Webster (10th Ed. 1993).

E. Common to both definitions are the concepts of "combining and arranging parts" and "building."

F. Merriam-Webster's Dictionary defines the verb "building," as "the art or business of assembling materials into a structure." *Building*, Merriam-Webster (10th Ed. 1993).

G. Merriam-Webster's Dictionary defines the verb "build" as "to form by ordering and uniting materials by gradual means into a composite whole." *Build*, Merriam-Webster, (10th Ed. 1993).

H. Therefore, "construction" has only begun if Harmony combined or arranged parts, or elements, into a structure or composite whole.

I. The tasks completed by Harmony, include: (1) clearing the Project site; (2) boring potholes for monitoring soil compaction; (3) staking the Project site; (4) delivering custom-made monitoring plates, iron pipes, fine scree used in the potting and compaction/grading process and other soil compaction materials to the property; and (5) placing a job board on the Property. *See*, Stipulated Facts.

J. These tasks do not qualify as "construction" because such tasks did not involve the combining or arranging parts, or elements, into a structure or composite whole.

K. Harmony proposed that the definition of "construction" supplied in Chapter 405, Article III, Section 405.112(B) applies to the Final Plan.

L. As stated in Section 405.112(B), "[u]nless specifically defined below, **words or phrases in this [Article III]** shall be interpreted so as to give them the same meaning as they have in common usage and **so as to give this [Article III]** its most reasonable application." *See*, Municipal Code Section 405.112(B). (Emphasis added).

M. Because the P.U.D. Ordinance is found in Chapter 405, **Article V**, the definition of "construction" supplied in Section 405.112(B) is not applicable thereto.

N. However, even if the definition of "construction" supplied in Section 405.112(B) applies to the P.U.D. Ordinance, Harmony still had not begun "construction" prior to May 18, 2023.

O. Municipal Code Section 405.112(B) defines "construction" as,

"[t]he act of adding an addition to an existing structure or the erection of a new principal or accessory structure on a lot or property."

P. "Construction," pursuant to Municipal Code Section 405.112(B), requires: (1) an addition to an existing structure, or (2) a new principal or accessory structure to be erected on a property.

Q. Municipal Code Section 405.112(B) defines "structure" as,

"[a]nything constructed or erected, the use of which requires permanent or temporary location on or in the ground including, but without limiting the generality of the foregoing, buildings, fences, gazebos, advertising signs, billboards, radio and television antennae and towers, cellular telephone towers, satellite towers and swimming pools."

R. Because the tasks cited above did not result in any structure being erected on the Property at the point when the Stop Work Order was issued, "construction," as defined in Municipal Code Section 405.112(B), has not begun on the Project.

## *II. The Stop Work Order is Valid*

S. Municipal Code Section 500.040(A)(14) does not govern stop work orders issued in connection with a Planned Unit Development Project. Municipal Code Section 500.040(A)(14) applies only to a stop work order issued in response to violations of the Building Code or building permits.

T. Even if Municipal Code Section 500.040(A)(14) generally applied to the issuance of stop work orders within the City, Section 500.040(A)(14) does not apply to the P.U.D. Ordinance. Specific designations in an ordinance control over general terms. *Terminal R.R. Ass'n of St. Louis v. City of Brentwood*, S.W.2d 768, 769 (Mo. 1950). Where one ordinance provision contains general language, and another contains more specific language, the general language shall give way to the specific. *Brandsville Fire Protection District v. Phillips*, 674 S.W.3d 373, 378 (Mo. App. S.D. 2012). Therefore, the specific language of P.U.D. Ordinance Section 405.400 pertaining to stop work orders governs over general applicability, if any, of Municipal Code Section 500.040(A)(14).

U. P.U.D. Ordinance Section 405.400 authorizes the City to issue a stop work in connection with any Planned Unit Development Project as follows:

"**[a]ny violation of either the approved area plan or approved final plan shall be grounds for the Code Enforcement Officer to issue a stop-work order** and to withhold building permits, occupancy permits or certificates of zoning compliance until the violation is removed, or the area plan and/or final plan is otherwise complied with, and shall cause the owner of the development, or any portion thereof, to be subject to the provisions of this [Chapter 405, Article V]." (Emphasis added).

V. P.U.D. Ordinance Section 405.390(C) provides, in pertinent part, that a Planned Unit Development Final Plan,

"shall expire and be of no effect one (1) year after the date of approval unless construction is begun and diligently pursued in accordance with the approved plan."

W.     Because "construction" did not begin between May 18, 2022 (the Final Plan Approval Date) and May 18, 2023 (one year after the Final Plan Approval Date), the Final Plan has expired and is of no effect.

X.     Additionally, under P.U.D. Ordinance Section 405.360(A)(1), approval of an Area Plan by the Board of Aldermen,

> "shall assure the applicant that the area plan is acceptable to the Board for a three-year period, provided construction is diligently pursued[.]"

Y.     Because "construction" did not begin prior to May 18, 2023, construction cannot have been "diligently pursued" and, therefore, the Area Plan has also expired and is of no effect.

Z.     Because the Area Plan and Final Plan have both expired, beginning construction at any time after May 18, 2023, would result in a violation of both the Area Plan and the Final Plan.

AA.     Therefore, the City was authorized to issue the Stop Work Order pursuant to P.U.D. Ordinance Section 405.400 to prevent Harmony from beginning illegal construction on the Project after the expiration of the Area Plan and Final Plan.

BB.     In the alternative, even if Municipal Code Section 500.040(A)(14) governs the issuance of the Stop Work Order, the Stop Work Order complies with Section 500.040(A)(14) and is valid thereunder.

CC.     A stop work order issued under Section 500.040(A)(14) must: (1) state the reason(s) for the order, and (2) state the conditions under which work may resume.

DD.     In the Stop Work Order, the City stated the Stop Work Order was issued because construction had not begun in the year following the Final Plan approval, resulting in the Final Plan becoming "expired and of no effect." *See*, Respondent's Exhibit 16/Appellant's Exhibit B-7.

EE.     The Stop Work Order also stated the conditions under which work may begin, namely,

> "[a]ny violation of either the approved area plan or approved final plan shall be grounds for the Code Enforcement Officer to issue a stop-work order […] until the violation is removed, or the area plan and/or final plan is otherwise complied with[.]"

*See*, Respondent's Exhibit 16/Appellant's Exhibit B-7.

FF.     The Stop Work Order is valid under P.U.D. Ordinance, Section 405.400 (the controlling authority) and Section 500.040(A)(14).

### *III.     Additional Permit Expirations*

GG. Developments in the City's Old Town Historic District consisting of commercial and multiple family dwellings are required to apply for and obtain a conditional use permit. *See*, Municipal Code Section 405.095(B).

HH. On December 15, 2021, the City approved Harmony's Second Conditional Use Permit. *See*, Respondent's Exhibit 8.

II. Pursuant to Municipal Code Section 400.130(G)(1),

"1. No conditional use permit granted by the Board of Aldermen shall be valid for a period longer than one hundred eighty (180) days from the date of the granting of the conditional use permit by the Board of Aldermen, unless within such period:

a. A building permit is obtained and the erection or alteration of the real property and related structures, if any, is commenced; or

b. The use lawfully commenced."

JJ. For the Second Conditional Use Permit to remain valid, Harmony was required to (1) obtain a building permit, and (2) begin the erection or alteration of the Property and related structures, both on or before June 13, 2022.

KK. Harmony did not obtain a building permit until November 7, 2022.

LL. Harmony did not commence any activities at the Property until March, 2023.

MM. Because Harmony did not obtain a building permit until November 7, 2022, and did not commence any activity at the Property until March 2023, both of which occurred after the June 13, 2022 deadline, the Second Conditional Use Permit has expired. Further, Harmony neither requested nor obtained an extension to the validity of the Second Conditional Use Permit.

NN. Projects in the City's Old Town Historic District require a Certificate of Appropriateness issued by the Old Town District Historic Commission pursuant to Municipal Code Section 405.115(A)(1).

OO. Municipal Code Section 405.135(C) provides, in pertinent part,

"A certificate of appropriateness shall become void unless construction is commenced within six (6) months of date of issuance or otherwise extended by the OTHDC[.]

PP. The Second Certificate of Appropriateness was issued on April 7, 2022. Harmony was required to commence construction under the Second Certificate of Appropriateness on or before October 7, 2022.

QQ.   Because Municipal Code Section 405.135(C) is a part of Chapter 405, Article III, the definition of "construction" provided in Municipal Code Section 405.112(B) applies to assess whether construction has commenced with regard to the Second Certificate of Appropriateness.

RR.   However, as discussed above, "construction" has not commenced even under Municipal Code Section 405.112(B). Additionally, Harmony never requested an extension regarding the Second Certificate of Appropriateness. Therefore, the Second Certificate of Appropriateness is expired.

SS.   Harmony's Building Permit, issued November 7, 2022, is also expired. Section 500.040(A)(6), related to building permit expiration, states, in pertinent part,

> "Every permit issued shall become invalid and expired unless the work on the site authorized by such permit is commenced within one hundred eighty (180) days after its issuance, or if the work authorized on the site by such permit is suspended or abandoned for a period of one (1) year after the time the work is commenced."

TT.   Because Harmony did not commence work on the building within one hundred eighty (180) days from when the City issued its Building Permit, the Building Permit is expired. Further, Harmony neither requested nor obtained an extension to the validity of the Building Permit.

## CONCLUSION

At a public meeting held on July 20, 2023, the Board of Adjustment of the City of Cottleville, Missouri, reviewed and discussed the Appeal, the sworn testimony, and all information and briefs presented by each interested party. Following discussion of the foregoing, and after each Board Member had been provided the opportunity to express their respective thoughts concerning the Appeal, a motion was made to APPROVE the Appeal. The vote of the Board was two (2) in the affirmative, two (2) in the negative, and one (1) member(s) absent. The motion failed and the Appeal was DENIED.

Based on all of the circumstances, including the Application and the evidence presented to the Board of Adjustment, Harmony's Appeal of the Stop Work Order issued by the City on May 19, 2023, shall be, and is hereby DENIED, and the Stop Work Order shall remain in full force and effect.

PASSED AND APPROVED by the Board of Adjustment this 20th day of July, 2023.

BOARD OF ADJUSTMENT
CITY OF COTTLEVILLE, MISSOURI

By_____
Mike Louis, Chairman