IN THE ELEVENTH JUDICIAL CIRCUIT, STATE OF MISSOURI
CIRCUIT JUDGE DIVISION

FILED
APR 17 2024
CIRCUIT CLERK
ST. CHARLES COUNTY

| | |
|---|---|
| HARMONY POINTE, LLC, ) | |
| ) | |
| Petitioner, ) | Cause No. 2311-CC00860 |
| ) | Division 5 |
| v. ) | |
| ) | |
| CITY OF COTTLEVILLE, MO, et al. ) | |
| ) | |
| Respondents. ) | |

## JUDGMENT

In this case, the Petitioner, Harmony Pointe, LLC ("Petitioner"), seeks judicial review of a decision by the City of Cottleville's ("City") Board of Adjustment upholding a Stop Work Order issued to Petitioner in connection with a proposed apartment complex development to be constructed on property commonly known and numbered as 1503 Highway N (the "Property"), within the City. Petitioner's Final Plan for the development was approved on May 18, 2022, pursuant to Ordinance 2008. The Stop Work Order was issued by the City Administrator and Mayor on May 19, 2023.

The Court, having taken judicial notice of the file in this cause, having reviewed the pleadings, exhibits, and joint stipulated facts submitted by the parties, and having heard argument, is fully advised.

For the reasons set forth below, the City of Cottleville's Board of Adjustment's decision is REVERSED.

### FACTUAL AND PROCEDURAL BACKGROUND

On June 14, 2021, the City received a Conditional Use Application (the "First C.U.P. Application"), submitted by Cliff Heitmann, a civil engineer at Bax Engineering Co., on behalf of Joseph Shatro (the owner of Property immediately preceding Petitioner) seeking to develop the

**EXHIBIT F**

Property. The City also received a Planned Unit Development-Area Plan Application submitted by Progress Property Group, which is a development entity related to Petitioner. The plans submitted with the First C.U.P. Application involved a mixed-use project, consisting of multiple-family apartments and commercial uses (the "Project"). On August 18, 2021, the City's Board of Alderman approved these applications pursuant to Ordinances Nos. 1951 and 1952. The City's Old Town Historic District approved the Project's initial elevations and issued the first Certificate of Appropriateness for the Project on October 4, 2021.

Cliff Heitmann, on behalf of Petitioner, subsequently submitted a second Conditional Use Application (the "Second C.U.P. Application") and a second Planned Unit Development-Area Plan Application ("Amended Area Plan"), for the same proposed use as the First C.U.P. Application, on November 17, 2021. The City's Board of Alderman approved the Second C.U.P. Application and the Amended Area Plan on December 15, 2021, pursuant to Ordinance Nos. 1979[1] and 1980. The City's Old Town Historic District again approved amended elevations for the Project and issued a Second Certificate of Appropriateness on April 7, 2022.

On April 13, 2022, the City received a Planned Unit Development-Final Plan Application for the Project. The City's Board of Alderman approved the Final Plan for the Project ("Final Plan") pursuant to Ordinance No. 2008 on May 18, 2022. Section 405.390(C) of the City's P.U.D. Ordinance states:

> **Approval of the final plan in a PUD shall expire and be of no effect one (1) year after the date of approval unless construction is begun and is diligently pursued in accordance with the approved plan. Expiration of the approved plan shall authorize the Board to require filing and review of a new final plan in accordance with the provision of this [Chapter 405, Article V].**

---

[1] Seg. 14; BOA Record 267-270; Appendix D

2

Following the Final Plan approval, Petitioner obtained additional permits and approvals required under the City's Municipal Code. Petitioner submitted a Building Permit Application on September 29, 2022, and the City issued the Building Permit for the Project on November 7, 2022. Petitioner did not construct or erect any building on the Property between May 18, 2022 and May 18, 2023. During that timeframe, Petitioner permitted its neighbor, the owner of Frankie Martin's Garden, to regularly use Petitioner's Property as a parking lot for patrons visiting Frankie Martin's Garden.

However, the record establishes that between March 28, 2023 and May 15, 2023, Petitioner engaged in at least the following construction activities in furtherance of the Project: staking the Property for tree clearing; cutting trees along Highway N and other tree clearing; surveying and staking building corners; preparation of the building pad by hydro-excavating along Highway N; working with Ameren regarding covering overhead electrical lines and proximity of surcharge material with Ameren's poles; performing additional hydro-excavation work in relation to Spire gas lines; clearing the Project site; boring potholes for monitoring soil compaction; and fabricating custom settlement plates which were to be used in the compaction process.

Despite Petitioner's actions taken between March 28 and May 15, 2023, on May 19, 2023, one year and one day after the date of the Final Plan approval, the City Administrator and Mayor issued a Stop Work Order pursuant to P.U.D. Ordinance, § 405.400. At that time, Petitioner's Second Conditional Use Permit, Second Certificate of Appropriateness, and Building Permit had also all nominally expired.

Petitioner filed an appeal of the Stop Work Order to the City's Board of Adjustment and requested that the Board reverse the issuance of the Stop Work Order. The Board held a hearing

on the record on July 20, 2023, and subsequently issued its Findings of Fact and Conclusions of Law upholding the City's decision to issue the Stop Work Order.

## STANDARD OF REVIEW

"The scope of judicial review of a board of adjustment decision is limited to determining whether the decision was authorized by law and supported by competent and substantial evidence upon the whole record." *Campbell v. City of Columbia*, 824 S.W.2d 47, 49 (Mo. App. W.D. 1991) (citing *Huff v. Board of Adjustment of City of Independence,* 695 S.W.2d 166, 167 (Mo. App. W.D. 1985). "The purpose of the writ is to test the legality of the board's order. The order of the board cannot be set aside solely because the court considers the evidence in a different light unless the action of the board is clearly contrary to the overwhelming weight of the evidence." *Cunningham v. Leimkuehler*, 276 S.W.2d 633, 636 (Mo. App. E.D. 1955).

"The Court determines de novo whether a decision is authorized by law as it is a legal question." *Emerald Pointe, LLC v. Taney County Planning Commission,* 621 S.W.3d 188, 192 (Mo. App. S.D. 2021). However, "[a] reviewing court cannot substitute its judgment for that of the Zoning Board of Adjustment." *Id.* (citing *Lorenz v. City of Florissant*, 787 S.W.2d 776, 777 (Mo. App. E.D. 1988)). "In reviewing for substantial evidence to support the decision of the [board], the evidence is viewed in the light most favorable to the board, giving it the benefit of all reasonable inferences." *Id.* "If the result reached could reasonably have been reached, a reviewing court is without authority to disturb the finding unless it was clearly contrary to the overwhelming weight of evidence." *Id.*

## **FINDINGS AND CONCLUSIONS**

The issue to be decided in this case is whether the record establishes Petitioner "began construction" within the one-year timeframe after its Final Plan was approved on May 18, 2022. Viewed in the light most favorable to the City's position, and giving the City the benefit of all reasonable inferences, this Court cannot conclude that the Board could reasonably have reached the conclusions it did. The Board's conclusions here were clearly contrary to the overwhelming weight of the evidence and were clearly erroneous.

The City's Code Chapter 405, Article V, titled Planned Unit Developments and Multiple-Family Planned Unit Developments ("P.U.D. Ordinance") governs the procedure, standards, and enforcement mechanisms for P.U.D. projects. P.U.D. Ordinances, §§ 405.325 to 405.405, are the relevant ordinances applicable to the Project at issue. P.U.D. Ordinance § 405.390(C) provides that the approval of a final plan shall expire after one (1) year unless construction is begun and diligently pursued in accordance with the approved Final Plan within that timeframe. Specifically, P.U.D. Ordinance § 405.390(C) states: "Approval of the final plan in a PUD shall expire and be of no effect one (1) year after the date of approval unless construction is begun and is diligently pursued in accordance with the approved plan." Importantly, however, the P.U.D. Ordinance does not define the terms "construction" or "the beginning of construction."

Petitioner asserts that it did engage in construction activities, or that it at least began construction, during the relevant timeframe by, among other things, as discussed in more detail above, surveying the Property, locating utilities, clearing trees, and boring potholes to monitor soil compaction. The City maintains that these activities do not constitute the beginning of construction. The Court finds the City's position in this regard is untenable both as a matter of law and as a matter of fact.

5

"In reviewing city ordinances, [the court] appl[ies] the same general rules of construction as are applicable to state statutes." *Emerald Pointe, LLC v. Taney County Planning Commission*, 621 S.W.3d 188, 192 (Mo. App. S.D. 2021). "The general rule is to determine and give effect to the enacting legislative body's intent of the ordinance." *Id.* "In an ordinance, the words contained therein should be given their plain and ordinary meaning." *Id.* In that regard, "the word's dictionary definition supplies its plain and ordinary meaning." *Hoffman v. Van Pak Corp.*, 16 S.W.3d 684, 688 (Mo. App. E.D. 2000).

Black's Law Dictionary defines "construction," in pertinent part, as "[t]he act of building by combining or arranging parts of elements; the thing so built." *Construction*, Black's Law Dictionary (11th ed. 2019). Merriam-Webster's dictionary defines, "construct" as "to make or form by combining or arranging parts or elements: build." *Construct*, Merriam-Webster (10th Ed. 1993).

Although "construction" is not defined in the P.U.D. Ordinances, the term is defined in City Code § 405.112(B). Specifically, City Code § 405.112 defines "construction" as, "the act of adding an addition to an existing structure or the erection of a new principal or accessory structure on a lot or property."

Ordinances are to be read in context with related ordinances, harmonizing all provisions. *See Antioch Cmty. Church v. Bd. of Zoning Adjustment of City of Kansas City*, 543 S.W.3d 28, 35 (Mo. banc. 2018). As to the meaning of "begun construction" within the City of Cottleville Ordinance §405.390.C, this Court is to give weight to the interpretation that, while still within the confines of the term, is least restrictive upon the rights of the property owner to use the land as he wishes." *Emerald Pointe v. Taney County*, 621 S.W. 3d 188 at 192 (Mo. App. S.D. 2021).

6

The City's position is that Petitioner merely engaged in pre-construction activities to prepare for construction and that the Court should not view the actions taken by Petition between March 28 and May 15, 2023 as "construction" or the "beginning of construction." This Court disagrees with the City's analysis.

The City's zoning and building ordinances provide various definitions of "construction" and the City's own representatives testified that "construction" can include such things as clearing, grubbing, grading and other activities that are required in order to build structures (i.e., exactly the sort of actions Petitioner undertook here). Giving the terms "construction" and "began construction" their plain and ordinary meaning, it is clear from the record that between March 28 and May 15, 2023 Petitioner was engaged in the act of building by combining or arranging parts of elements on the Property in furtherance of the Project.

It is clear from the record that although Petitioner had not yet built, erected, or completed assembly of any structure on the Property, it certainly began construction within the one-year timeframe after its Final Plan was approved on May 18, 2022.[2] Staking the Property for tree clearing; cutting and clearing trees along Highway N and elsewhere; surveying and staking building corners; preparation of the building pad by hydro-excavating along Highway N; working with Ameren regarding covering overhead electrical lines and proximity of surcharge material with Ameren's poles; performing additional hydro-excavation work in relation to Spire gas lines; clearing the Project site; boring potholes for monitoring soil compaction; and fabricating custom settlement plates to be used in the compaction process were all necessary parts or elements of the construction process. As such, it cannot reasonably be argued that these actions did not constitute construction or the beginning of construction. Although it may not have done so as quickly as the

---

[2] It is irrelevant to the issue squarely before this Court that the Property remained mainly dirt and gravel during the entirety of that one-year timeframe, and was used as a parking lot for much of that time.

City would have preferred, Petitioner unquestionably began construction within the relevant timeframe.

Having concluded that Petitioner began construction within the relevant timeframe as required by P.U.D. Ordinance § 405.390(C), the Court finds that the City had no authority to issue the Stop Work Order.

As discussed above, P.U.D. Ordinance § 405.390(C) provides, in pertinent part, that a Final Plan "shall expire and be of no effect one (1) year after the date of approval unless construction is begun and diligently pursued in accordance with the approved plan." Because Petitioner did begin construction before May 18, 2023, Petitioner's Final Plan did not expire as the City contends.

The Court therefore concludes that the City was not authorized to issue the Stop Work Order pursuant to P.U.D. Ordinance §405.400 in order to prevent Petitioner from continuing construction of the Project. The Stop Work Order was not authorized by law. Furthermore, the Board of Adjustment's decision to deny Petitioner's appeal of the Stop Work Order was not authorized by law, nor was it supported by competent, substantial evidence.

Accordingly, it is the JUDGMENT, ORDER and DECREE of this Court that:

1. The City of Cottleville's May 19, 2023 Stop Work Order is declared null and void.

2. The City of Cottleville's Board of Adjustment's decision is REVERSED.

**SO ORDERED:**

_____
W. Christopher McDonough
Circuit Judge

Dated: April 17, 2024