Electronically Filed - EASTERN DISTRICT CT OF APPEALS - August 21, 2024 - 06:00 PM

**IN THE MISSOURI COURT OF APPEALS
EASTERN DISTRICT**

---

**APPEAL NO. ED112620**

---

**HARMONY POINTE, LLC,**

**Appellant/Plaintiff,**

**v.**

**CITY OF COTTLVILLE, MISSOURI, et al.,**

**Respondents/Defendants.**

---

**Appeal from the Circuit Court of St. Charles County, Missouri
The Honorable Christopher McDonough**

---

**BRIEF OF RESPONDENTS/DEFENDANTS**

---

<div style="margin-left:auto">

Jared D. Howell, #67332
HAMILTON WEBER LLC
200 North Third Street
St. Charles, MO, 63301
(636) 947-4700
(636) 947-1743 (Facsimile)
jhowell@hamiltonweber.com

*Attorney for Respondents*

</div>



## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………….iii

STATEMENT OF FACTS…………………………………………………………………….1

ARGUMENT……………………………………………………………………………..8

I.    THE BOARD OF ADJUSTMENT DID NOT ERR IN UPHOLDING THE STOP WORK ORDER BECAUSE THE CITY HAD A LEGAL BASIS FOR ISSUING THE STOP WORK ORDER IN THAT HARMONY POINTE DID NOT BEGIN CONSTRUCTION ON THE DEVELOPMENT BEFORE MAY 18, 2023…………………………………………………………………...8

A.  The Term "Construction" employed in Section 405.390(C) of the Code shall be Given its Plain and Ordinary Meaning……………………………...……8

B.  The Definition of "Construction Activity" supplied in Section 510.010 of the Code Does Not Apply to Govern the Meaning of "Construction" As Used in Section 405.390 of the Code…………………………………………………11

C.  By Properly Applying the *In Pari Materia* Doctrine and Employing the Definition of "Construction" in Section 405.112 of the Code, Harmony Did Not Begin Construction……………………………………………………14

D.  The City's Interpretation of Construction and the Stop Work Order are Not Contradictory…………………………………………………………...15

II.    THE BOARD OF ADJUSTMENT DID NOT ERR IN UPHOLDING THE STOP WORK ORDER BECAUSE THE CITY DID HAVE A LAWFUL BASIS FOR ISSUING THE STOP WORK ORDER UNDER SECTION 405.400 OF

Electronically Filed - EASTERN DISTRICT OF APPEALS - August 21, 2024 - 06:00 PM

THE CODE IN THAT ANY WORK COMPLETED AFTER THE EXPIRATION OF THE FINAL PLAN WOULD HAVE BEEN ILLEGAL AND IN VIOLATION OF THE P.U.D. ORDINANCE……………………………..16

A. The City was Authorized to Issue the Stop Work Order pursuant to Section 405.400 of the Code because Harmony's Final Plan Expired……………………………………………………………….....16

B. Subsection D of Point II of Harmony's Brief Should be Disregarded by This Court Because the Argument is Not Compliant with Rule 84.04(e)………………………………………………………...….18

C. Alternatively, and Notwithstanding the Arguments Presented in Part B Above, The Stop Work Order is Not Facially Invalid as Claimed By Harmony…………………………………………………….……..19

CONCLUSION………………………………………………………………….…..22

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - August 21, 2024 - 06:00 PM

# TABLE OF AUTHORITIES

**CASE LAW**

*Antioch Cmty. Church v. Bd. of Zoning Adjustment City of Kansas City*,

    543 S.W.3d 28 (Mo. banc 2018)……………………………………………...12, 13

*Cordes v. Williams*,

    201 S.W.3d 122 (Mo. App. W.D. 2006)…………………………………….....18, 19

*Hoffman v. Van Pak Corp*,

    16 S.W.3d 684 (Mo. App. E.D. 2000)……………………………...…………9

*Jefferson ex rel. Jefferson v. Missouri Baptist Medical Center*,

    447 S.W.3d 701 (Mo App. E.D. 2014)…………………………….………..14

*McQueen v. Gadberry*,

    507 S.W.3d 127 (Mo. App. E.D. 2016)…………………………..…………12

*Osthus v. Countrylane Woods II Homeowners Ass'n*,

    389 S.W.3d 712 (Mo. App. E.D. 2012)…………………………….………..18

*Placke v. City of Sunset Hills Mo.*,

    670 S.W.3d 288 *(*Mo. App. E.D. 2023)…………………….……………………1

*Tupper v. City of St. Louis*,

    468 S.W.3d 636 (Mo. banc 2015)……………………………….……………9

*Wollard v. City of Kansas City*,

    931 S.W.2d 200 (Mo. banc 1992)…………………………………………9, 17

*Versatile Mgmt. Group v. Finke*,

    252 S.W.3d 227 (Mo. App. E.D. 2008)……………………………………1

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - August 21, 2024 - 06:00 PM

## REGULATIONS, RULES AND ORDINANCES

Mo. Rev. Stat. § 89.090……………………………………………………………7

Rule 84.04…………………………………………………………………...1, 2, 18

Municipal Code of the City of Cottleville § 405.112………………………….....14, 15

Municipal Code of the City of Cottleville § 405.390…………....…4, 5, 8, 9, 11, 12, 13, 14

Municipal Code of the City of Cottleville § 405.400……………….6, 16, 17, 18, 19, 20, 21

Municipal Code of the City of Cottleville § 500.040(A)(14)……………………………..21

Municipal Code of the City of Cottleville § 510.010…………………………11, 12, 13, 14

## OTHER AUTHORITIES

*Build*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/build (Last Updated August 11, 2024)…………………………10

Building, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/building (Last Updated August 15, 2024)……………………...10

*Construct*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/construct (Last Updated August 20, 2024)……………………...9

*Construction*, Black's Law Dictionary (12ed. 2024)…………………………………...…9

*Construction*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/construction (Last Updated August 10, 2024)…………………....10

## STATEMENT OF FACTS

Respondents[1] submit their own Statement of Facts setting forth the facts as established by the Board of Adjustment Record.[2]

### I.    Project Permits and Approvals

On or about November 17, 2021, Cliff Heitmann, on behalf of Harmony Pointe, LLC ("Harmony") and pursuant to City of Cottleville's ("City") Planned Unit Development Regulations found in §§ 405.325 to 405.405 of the Municipal Code of the City of Cottleville (the "P.U.D. Ordinance"), submitted to the City a P.U.D. Request – Area Plan Application, to build a multi-family mixed use development project (the "Project") at

---

[1] Harmony identified itself as the respondent and titled its brief as "Respondent's Brief". Under Rule 84.05, "[t]he party aggrieved by the agency decision shall file the appellant's brief and reply brief." Rule 84.05(e); *see also Versatile Mgmt. Group v. Finke*, 252 S.W.3d 227, 231 (Mo. App. E.D. 2008) ("In such a procedural posture, all districts of this Court have noted that the party who was aggrieved by the administrative decision is designated as appellant and is to file the appellant's brief on appeal."). Because Harmony is the party aggrieved by the Board of Adjudgment's decision, Harmony ought to be designated as "Appellant" for purposes of filing the Appellant's brief.

[2] Harmony's recitation of the facts, beginning on page 5 and ending on page 12 of its Brief, fails to comply with Rule 84.04(c) because it is littered with argument. For example, Harmony states, "[t]he City of Cottleville's new leaders are illegally trying to kill a development of multi-family apartment buildings that Harmony Pointe has previously been approved to build by their predecessors." Harmony Brief, p. 5. "Interspersing argument throughout the statement of facts violates Rule 84.04(c)." *Placke v. City of Sunset Hills Mo.*, 670 S.W.3d 288, 231 (Mo. App. E.D. 2023) (internal citations and quotations omitted). "A violation of Rule 84.04(c), standing alone, constitutes grounds for dismissal of an appeal." *Id.* (internal citations and quotations omitted).

property located in the City commonly known and numbered as 1503 Highway N, Cottleville, Missouri 63304 (the "Property").  D99, pp. 13-16; D167, at ¶¶ 3, 11, 34.[3]

The Property is located in the City's Historic Old Town Overlay District (the "Old Town District"), which is subject to zoning permits and approvals pursuant to §§ 405.095 to 405.172 of the Municipal Code of the City (the "Old Town District Regulations"). D167, at ¶¶ 14, 15, 17.

In addition to the P.U.D. Request–Area Plan Application ("Area Plan"), Mr. Heitmann also submitted a Conditional Use Application on or about November 17, 2021, requesting to use the Property for a multi-family development, in accordance with the Old Town District Regulations. D99, pp. 10-12; D167, at ¶¶ 14 and 34.

On December 15, 2021, the City's Board of Aldermen approved the Area Plan for the Project and authorized the execution of a Planned Unit Development Agreement pursuant to Ordinance No. 1979.  D99, pp. 17-32; D100, pp. 1-3; D167, at ¶ 36.  On that same date, the City's Board of Aldermen also approved the Conditional Use Permit for the Project pursuant to Ordinance No. 1980.  D100, pp. 4-13; D167, at ¶ 36. On April 7, 2022, the City's Old Town Historic Commission approved Harmony's Certificate of Appropriateness pursuant to the Old Town District Regulations.  D167, at ¶¶ 17, 44.[4]

---

[3] In its Brief, Appellants cite the system-generated legal file as "L.F.__" However, Respondents cite the system-generated legal file in this Brief as "D__" in compliance with Rule 84.04(e).

[4] The timeline discussing the Area Plan, Conditional Use Permit, and Certificate of Appropriateness is limited to the period Harmony owned the Property.  All applications submitted during Joseph Shatro's (Harmony's predecessor in interest) ownership of the Property are irrelevant to this Appeal. *See* D167, at ¶¶ 27, 28, 29, 30.

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - August 21, 2024 - 06:00 PM

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - August 21, 2024 - 06:00 PM

On or about April 13, 2022, the City received a P.U.D. Request–Final Plan application for the Project (the "Final Plan"). D167, at ¶ 46. On May 18, 2022, the City's Board of Alderman approved the Final Plan for the Project pursuant to Ordinance No. 2008. D104, pp. 18-27; D167, at ¶ 48.

Following the approval of the Final Plan, on July 22, 2022, Harmony submitted its Construction Plan Application for the Project. D95, pp. 2-4; D167, at ¶ 51. On September 29, 2022, Harmony submitted its Building Permit Application for the Project. D101, p. 5; D151, p. 32; D167, at ¶ 55. The City approved Harmony's construction plans on November 1, 2022, and Harmony's building permit on November 7, 2022. D101, pp. 3-4, 6; D151, p. 32; D167, at ¶¶ 61-62. On or about November 14, 2022, the City and Harmony executed an escrow agreement, which required Harmony to deposit $25,000.00 with the City pursuant to the City's grading requirements to ensure the City has adequate funds to restore the site in the event Harmony began, and subsequently abandoned, grading activities. D150 pp., 73:21-25; 74:1-25.

## II.    Relevant Timeframes

Section 400.130(G)(1) of the Municipal Code of the City of Cottleville (the "Code") defines the period of validity regarding Conditional Use Permits, stating:

> [n]o conditional use permit granted by the Board of Aldermen shall be valid
> for a period longer than one hundred eighty (180) days from the date of the
> granting of the conditional use permit by the Board of Aldermen, unless
> within such period: (1) a building permit is obtained and the erection or

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - August 21, 2024 - 06:00 PM

alteration of the real property and related structures, if any, is commenced;

or (2) the use lawfully commenced.

D167, at ¶ 15; D92, pp. 42-43.

Section 405.135(C) of the Old Town District Regulations defines the period of validity regarding Certificates of Appropriateness, stating: "[a] certificate of appropriateness shall become void unless construction is commenced within six (6) months of the date of issuance or otherwise extended by the [Old Town Historic District Commission.]" D167, at ¶ 19; D92, p. 43.

Section 405.390(C) of the P.U.D. Ordinance defines the period of validity regarding P.U.D. final plans, stating: "[a]pproval of the final plan in a PUD shall expire and be of no effect one (1) year after the date of approval unless construction is begun and is diligently pursued in accordance with the approved plan[.]" D167, at ¶ 22; D92, p. 41. *Id.*

### III.    <u>Work Completed</u>

On September 14, 2021, prior to the issuance of the building permit or approval of the construction plans, Harmony's geotechnical engineer drilled four borings at the Property.  D134, pp. 29-31.  Following construction plan approval and building permit issuance, on November 7, 2022, Harmony's geotechnical engineer resumed drilling borings at the Property.  *Id*.

 On March 28, 2023, Bax Engineering began staking the Property for tree clearing. D133, pp. 24-27.

On March 29 and 30, 2023, Kolb Grading cleared trees from the Property.  D133, pp. 12-23; D150, p. 201:21-202:14.

4

Electronically Filed - EASTERN DISTRICT OF APPEALS - August 21, 2024 - 06:00 PM

On May 4, 2023, Bax Engineering returned to the site and began staking corners of the proposed building to be constructed on the Property.  D133, pp. 8-11; D150, pp. 200:24-201:20.

On May 7, 2023, Harmony's general contractor erected a job information board on the Property, which included schedules and other information for the various subcontractors who were expected to work at the Property.  D133, pp. 4-7; D150, p. 200:9-23.

On May 9, 10, and 11, 2023, Kolb Grading conducted hydro-excavation work at the Property.  D132, pp. 7, 11, 15; D150, pp. 198:12-20, 199:1-3, 6-9.

On May 15, 2023, Kolb Grading continued hydro-excavation work at the Property and began fabricating steel settlement plates. D132, p. 3; D150, pp. 197:7-15.

## IV.    The Stop Work Order

On May 19, 2023, the City issued a Stop Work Order halting all activities at the Property. D92, pp. 16-17 (the "Stop Work Order"). The Stop Work Order stated as follows:

> It has come to the attention of the City that Harmony Pointe LLC has not begun construction on the Project in accordance with the requirements of the Municipal Code of the City of Cottleville (the "Municipal Code"). Under Section 405.390.C of the Municipal Code, an approved P.U.D. final plan, "shall expire and be of no effect one (1) year after the date of approval **unless construction is begun and diligently [pursued] in accordance with the approved plan**." Because construction has not begun on the Project, the Final Plan has expired and is of no effect.

5

Electronically Filed - EASTERN DISTRICT OF APPEALS - August 21, 2024 - 06:00 PM

. . .

Therefore, pursuant to Section 405.400 of the Municipal Code, **a Stop Work Order is hereby issued prohibiting any construction work or related activity to be conducted pursuant to the Final Plan or in furtherance of the Project**.

D92, pp. 16-17 (emphasis in original).

## V.     The Board of Adjustment Hearing

Following the issuance of the Stop Work Order, Harmony ceased work at the Property and appealed the Stop Work Order to the Board of Adjustment, which resulted in the City and Harmony submitting briefs in support of their respective positions.  D91, pp. 4-11; D92, pp. 37-44; and D105, pp. 12-18.

On July 20-21, 2023, the Board of Adjustment held a hearing on Harmony's appeal. D150, pp. 33-254.  At the hearing, the City and Harmony submitted a joint stipulated statement of facts.  D150, pp. 11-25.  During the hearing, Harmony presented testimony from the following individuals: (1) Kurt Odle, Harmony's owner; (2) Nick Hugeback, a representative of Harmony's general contractor; (3) Cliff Heitmann, Harmony's engineer; and (4) Jeff Kolb, owner of Kolb Grading.  D150, pp. 33-254.  The City presented testimony from the then-current City Administrator, Rich Francis. *Id.*

Following the conclusion of all evidence and testimony, the Board of Adjustment Chairman called a vote regarding the appeal of the Stop Work Order.  D150, p. 250:2-16. As the question was phrased, voting "yes" would result in a rescission of the City's Stop Work Order and voting "no" would uphold the Stop Work Order.  *Id*.  Two Board of

Adjustment members voted "yes," and two Board of Adjustment members voted "no." D150, p. 250:18-25. Thus, the City's Stop Work Order remained in place. *See* Mo. Rev. Stat. § 89.090.

Following the vote, the Board of Adjustment reviewed and voted unanimously to adopt the City's proposed Findings of Fact and Conclusions of Law.  D150, pp. 250:23-251:7; D150, pp. 252:4-23; D150, pp. 26-32.  In addition to finding that construction had not begun and that the Final Plan expired, the Board of Adjustment found that Harmony's Conditional Use Permit and Certificate of Appropriateness both expired. D150, pp. 26-32.

## VI.    Harmony Pointe's Petition for Writ of Certiorari and the Trial Court's Judgment

Harmony filed a Petition for Writ of Certiorari in the Circuit Court of St. Charles County challenging the Board of Adjustment's findings.  D90.  Following review of the Board of Adjustment record, briefing by the parties, and oral argument, the Circuit Court entered its judgement in favor of Harmony and declared the Stop Work Order null and void. D173.

This appeal by the City followed. D174.

Electronically Filed - EASTERN DISTRICT OF APPEALS - August 21, 2024 - 06:00 PM

**ARGUMENT[5]**

**I.**    **THE BOARD OF ADJUSTMENT DID NOT ERR IN UPHOLDING THE STOP WORK ORDER BECAUSE THE CITY HAD A LEGAL BASIS FOR ISSUING THE STOP WORK ORDER IN THAT HARMONY POINTE DID NOT BEGIN CONSTRUCTION ON THE DEVELOPMENT BEFORE MAY 18, 2023.**

Pursuant to Section 405.390(C) of the P.U.D. Ordinance, "[a]pproval of the final plan in a PUD shall expire and be of no effect one (1) year after the date of approval **unless construction is begun and is diligently pursued** in accordance with the approved plan." (emphasis added). The dispositive issue for this appeal is whether Harmony, in the year after it received Final Plan Approval, began construction as required by Section 405.390(C) of the P.U.D. Ordinance.[6] This inquiry focuses on the tasks completed by Harmony, and whether Harmony began construction pursuant to Section 405.390(C) of the P.U.D. Ordinance.

**A.**    **The Term "Construction" Employed in Section 405.390(C) Shall be Given its Plain and Ordinary Meaning.**

---

[5] Respondents agree that following judicial review of an administrative agency's decision, this Court reviews the agency's decision and not the circuit court's judgment. Respondents further agree that this Court determines *de novo* whether the administrative agency's decision is authorized by law, and that the reviewing court cannot substitute its judgment for that of the Board of Adjustment.

[6] Because Harmony did not begin construction, the requirement that Harmony diligently pursue construction is not discussed herein.

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - August 21, 2024 - 06:00 PM

The rules governing statutory interpretation apply when interpreting an ordinance. *Tupper v. City of St. Louis*, 468 S.W.3d 360, 371 (Mo. banc 2015). "In construing a statute, the words used in the statute are to be considered in their plain and ordinary meaning in order to ascertain the intent of the lawmakers." *Wollard v. City of Kansas City*, 831 S.W.2d 200, 203 (Mo. banc 1992). "It is the responsibility of the Court to ascertain and effectuate the intent of the General Assembly and in doing so the Court should look first to the language of the statute and the plain and ordinary meaning of the words employed." *Id*. (internal punctuation omitted). In determining legislative intent, Courts must give an undefined word used in a statute its plain and ordinary meaning. *Hoffman v. Van Pak Corp*., 16 S.W.3d 684, 688 (Mo. App E.D. 2000). "Under traditional rules of construction, the word's dictionary definition supplies its plain and ordinary meaning." *Id.*

The term "construction" as used in Section 405.390 of the P.U.D. Ordinance is not defined by the P.U.D. Ordinance. Because the term is not legislatively defined, the Court must turn to the plain and ordinary meaning of the same, as evidenced by its dictionary definition.

To that end, Black's Law Dictionary defines "construction" in pertinent part as "**[t]he act of building by combining or arranging parts or elements**; the thing so built." *Construction*, Black's Law Dictionary (12th Ed. 2024) (emphasis supplied).

Similarly, Merriam-Webster's Dictionary defines "construction," in pertinent part, as "the process, art, or manner of constructing something[.]" *Construction*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/construction (Last Updated August 10, 2024). Merriam-Webster's Dictionary refers the term "constructing"

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - August 21, 2024 - 06:00 PM

to the definition of "construct," which means "to make or form by combining or arranging parts or elements: build." *Construct*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/construct (Last Updated August 20, 2024).

Common to these definitions are the concepts of ***combining and arranging parts*** and ***building***. Accordingly, based on its dictionary definition, "construction" only began if Harmony engaged in the acts of combining and arranging parts or building.[7]

Based upon the plain meaning of the term "construction" defined above, Harmony would have begun construction only if the tasks completed by Harmony involved the combining or arranging of parts, or elements, into a structure or composite whole.

As provided in the Statement of Facts and supported by the record, Harmony engaged in the following activities: (1) staking the Property for tree clearing; (2) tree clearing; (3) staking the building corners; (4) posting a job board for internal use; (5) hydro excavation; and (6) beginning the fabrication of steel compaction plates.  As seen by the photographs taken at the Property on May 18, 2023, the day before the Stop Work Order

---

[7] Merriam-Webster's Dictionary defines the verb "building" as "the art or business of assembling materials into a structure." *Building*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/building (Last Updated August 15, 2024). Merriam-Webster's Dictionary defines the verb "build" as "to form by ordering and uniting materials by gradual means into a composite whole." *Build*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/build (Last Updated August 11, 2024). Common between these two definitions is that materials will be transformed into a structure or composite whole.

was issued, those activities did not result in any structure or composite whole being located at the Property.[8]  D105, pp. 4-9; D92, p. 44.

Consequently, under the plain meaning of the term "construction," as used in the P.U.D. Ordinance, the activities and work conducted by Harmony at the Property do not qualify as construction. Harmony did not begin construction within the year following approval of the Final Plan as required by the P.U.D. Ordinance, and as a result, its Final Plan expired.

**B.** **The Definition of "Construction Activity" Supplied in Section 510.010 of the Code Does Not Apply to Govern the Meaning of "Construction" As Used in Section 405.390(C).**

Harmony argues that the definition of "construction activity" provided in Section 510.010 of the Code applies to govern the meaning of the term "construction" used in Section 405.390(C) of the P.U.D. Ordinance. Harmony Brief, p. 16. However, this argument is misplaced.

As a preliminary matter, in its Statement of Fact, Harmony claims, "[a]t the hearing, Harmony Pointe also solicited testimony from the City Administrator, Rich Francis, who admitted 'construction' can include such things as clearing, grubbing, grading and other activities that are required in order to build a structure. L.F. 150, p. 81:7-22." Harmony Brief, p. 10-11. This is argument, not fact, and misrepresents Mr. Francis' testimony

---

[8] The sole structure visible in those photographs is not part of the Project nor is it located on the Property. *See* D150 p. 242:2-4.

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - August 21, 2024 - 06:00 PM

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - August 21, 2024 - 06:00 PM

regarding an issue that is central to this case. In the testimony cited by Harmony, Mr. Francis answered questions regarding the definition of "construction activity" provided in Section 510.010, which the Board of Adjustment found to be irrelevant to the issue presented to the Board.  *See* D150, pp. 79:20-25; 80:1-25; 81:1-22; *see also*, D150 pp. 26-32. Mr. Francis did not "admit" construction began in a zoning context, as Harmony leads this Court to believe.

Generally, ordinances related to the same subject matter are to be construed together as though they constitute one act.  *McQueen v. Gadberry*, 507 S.W.3d 127, 139 (Mo. App. E.D. 2016).  However, Harmony's attempt to employ this doctrine is misguided because the definition Harmony selectively chose is not related to the same subject matter contained in the P.U.D. Ordinance, a threshold requirement to the *in pari materia* doctrine.

To support its argument that the definition of "construction activity" supplied in Section 510.010 of the Code applies to Section 405.390(C) of the Code, Harmony cites the Missouri Supreme Court's holding in *Antioch Cmty. Church v. Bd. Of Zoning Adjustment of City of Kansas City* 543 S.W.3d 28 (Mo. banc 2018). *See* Harmony Brief, p. 16. Harmony contends that related ordinances should be harmonized and argues the definition of "construction activity" supplied in Section 510.010 of the Code should be used to define "construction" as used in Section 405.390(C) of the Code.  *Id*. Harmony misconstrues the Court's analysis in *Antioch*.

In *Antioch*, the Court explained, "[w]hen interpreting a statute, 'no portion of [it] is read in isolation, but rather, is read in context to the entire statute, harmonizing all provisions.'" 543 S.W.3d at 35 (quoting *Aquila Foreign Qualifications Corp. v. Dir. Of*

Electronically Filed - EASTERN DISTRICT OF APPEALS - August 21, 2024 - 06:00 PM

*Revenue*, 362 S.W.3d 1, 4 (Mo. banc 2012)). The case involved a church that was seeking a variance for a digital sign they had installed on their property. *Id*. at 31. The Court compared definitions of different sign types contained in the city's ***zoning code*** and concluded "the definition of monument sign in section 88-810 must be harmonized with ***other sections of the zoning code*.**" *Id*. at 35 (emphasis supplied).  Thus, the *Antioch* Court recognized the relevant portions of the city's code at issue were related to the same subject matter: ***zoning***. *Id*. Therefore, the Court found such provisions could be harmonized, a finding which is also consistent with the *in pari materia* doctrine of statutory interpretation. *Id*. at 36.

Harmony's assertion that the term "construction" used in Section 405.390(C) of the Code should be interpreted to carry the same definition as "construction activity" supplied in Section 510.010 of the Code is inconsistent with the holding in *Antioch* and the *in pari materia* doctrine.  Section 510.010 of the Code falls within Chapter 510 of the Code, which regulates ***Stormwater Management***.   Section 405.390(C) of the Code is found under Chapter 405, which regulates ***Zoning*** (not stormwater management). Consequently, Section 510.010 and Section 405.390(C) of the Code do not relate to the same subject matter, which is a requirement for the *Antioch* case and the *in pari materia* doctrine. Simply put, these are entirely distinct parts of the Code and cannot be harmonized in the manner Harmony suggests.  Furthermore, if the City's legislative body intended for the definition of "construction activity" supplied in Section 510.010 to apply to Section 405.390(C), it would have used the term "construction activity" in Section 405.390(C). However, the term "construction" is employed in Section 405.390(C), not "construction

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - August 21, 2024 - 06:00 PM

activity." *See Jefferson ex rel. Jefferson v. Missouri Baptist Medical Center*, 447 S.W.3d 701, 708 (Mo. App. E.D. 2014) (explaining that the legislature would have used the term "physician employee" in statute limiting wrongful-death claims against healthcare providers and their employees if it had meant to include physician employees as defined in another statute in the medical malpractice chapter).

Consequently, the definition of "construction activity" supplied in Section 510.010 of the Code does not apply to the term "construction" used in Section 405.390(C) of the Code.

C.    **By Properly Applying the In Pari Materia Doctrine and Employing the Definition of "Construction" in Chapter 405.112, Harmony Did Not Begin Construction.**

Notwithstanding the argument presented above, this Court can properly employ the *in pari materia* doctrine and reach the conclusion that Harmony did not begin construction.

Section 405.112 of the Code, which ***is part of the City's Zoning Code*** and provides regulations applicable to the City's Old Town Overlay Zoning District, of which the Property is a part, provides a definition of "construction."  In its initial Notice of Appeal to the Board of Adjustment, Harmony argued that the definition of "construction" provided in Section 405.112 of the Code applies to the term used in Section 405.390(C).  *See* D91, pp. 8-9 ("Harmony actively engaged in the act of 'construction' as defined in Section 405.112 of the Code[.]").  It is not surprising that Harmony abandoned this position on appeal, because the definition supplied in Section 405.112 of the Code results in the same finding as the plain meaning analysis: Harmony did not begin construction.

14

Pursuant to Section 405.112 of the Code, the term "construction" is defined as "[t]he act of adding an addition to an existing structure or the erection of a new principal or accessory structure on a lot or property." Thus, based upon its plain terms, for "construction" to have occurred under the definition supplied in Section 405.112 of the Code, Harmony must have: (1) added an addition to an existing structure, or (2) erected a new principal or accessory structure on a lot or property.

Section 405.112 of the Code defines "structure" as "[a]nything constructed or erected, the use of which requires permanent or temporary location on or in the ground including, but without limiting the generality of the foregoing, buildings, fences, gazebos, advertising signs, billboards, radio and television antennae and towers, cellular telephone towers, satellite towers and swimming pool."  As evidenced by the photographs of the Property taken on May 18, 2023, Harmony did not add to any existing structure on the Property, nor did Harmony erect a new principal or accessary structure on the Property. *See* D105, pp. 4-9; D92, p. 44.

Consequently, a proper application of the *in pari materia* doctrine results in the same conclusion as applying the plain dictionary meaning of the term "construction": ***Harmony did not begin construction within the year following approval of the Final Plan as required by the P.U.D. Ordinance***.

### D.  <u>The City's Interpretation of Construction and the Stop Work Order are Not Contradictory.</u>

Harmony argues that the City's interpretation of the term "construction" is contradicted by the Stop Work Order.  Specifically, Harmony contends, "[i]f construction

15

Electronically Filed - EASTERN DISTRICT OF APPEALS - August 21, 2024 - 06:00 PM

had not begun as the City claimed, then there was nothing to prohibit [with the Stop Work Order.]" Harmony Brief, p. 17.  For support of this assertion, Harmony cites the Stop Work Order, which states, "[a] Stop Work Order is hereby issued prohibiting any construction work or related activity to be conducted pursuant to the Final Plan or in furtherance of the Project." Harmony Brief, p. 17; D92, pp. 16-17 (emphasis removed from original).

What Harmony does not recognize is that the Stop Work Order is the City's remedy to prevent work on any P.U.D. Project pursuant to the P.U.D. Ordinance. D165, p. 2. Thus, it is incorrect to assert that the City had "nothing to prohibit" as claimed by Harmony, because the City has an interest in prohibiting Harmony from beginning construction pursuant to its expired Final Plan.

II.    **THE BOARD OF ADJUSTMENT DID NOT ERR IN UPHOLDING THE STOP WORK ORDER BECAUSE THE CITY DID HAVE A LAWFUL BASIS FOR ISSUING THE STOP WORK ORDER UNDER SECTION 405.400 OF THE CODE IN THAT ANY WORK COMPLETED AFTER THE EXPIRATION OF THE FINAL PLAN WOULD HAVE BEEN ILLEGAL AND IN VIOLATION OF THE P.U.D. ORDINANCE.**

A.    **The City was Authorized to Issue the Stop Work Order pursuant to Section 405.400 of the Code Because Harmony's Final Plan Expired.**

Harmony's contention that the Stop Work Order is not valid is based on the premise that no violation of the Final Plan occurred. This is misguided and renders Section 405.400 of the P.U.D. Ordinance meaningless. In Missouri, legislative bodies are presumed not to

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - August 21, 2024 - 06:00 PM

enact meaningless provisions. *Wollard v. City of Kansas City*, 831 S.W.2d 200, 203 (Mo. banc 1992).

The City issued the Stop Work Order pursuant to its authority under Section 405.400 of the P.U.D. Ordinance. D164. Therefore, Section 405.400 of the P.U.D. Ordinance governs the Stop Work Order. That Section provides as follows:

> The approved area plan and/or final plan shall have the full force of the Zoning Ordinance. Any violation of either the approved area plan or approved final plan shall be grounds for the Code Enforcement officer to issue a stop-work order and to withhold building permits, occupancy permits, or certificates of zoning compliance until the violation is removed, or the area plan and/or final plan is otherwise complied with, and shall cause the owner of the development, or any portion thereof, to be subject to the provisions of this Article.

D165 p. 2.

Harmony seems to believe that it is inconsequential whether its Final Plan was valid or not. In Harmony's view, it can do whatever it pleases so long as that action is consistent with the Final Plan, even after the Final Plan expires. Harmony's argument is misplaced and illogical. Because Harmony did not begin construction within one year following approval of the Final Plan, the Final Plan expired, and any construction beginning after the expiration date would be in violation of the P.U.D. Ordinance. Expiration of a Final Plan does not negate the City's ability to issue a Stop Work Order.

17

Consequently, the City was authorized to issue the Stop Work Order on the basis of the expired Final Plan.

**B.      Subsection D of Point II of Harmony's Brief Should be Disregarded by This Court Because the Argument is Not Compliant with Rule 84.04(e).**

Subsection D of Point II of Harmony's Brief does not comply with Rule 84.04(e) and should be disregarded by this Court.

Rule 84.04(e), which governs argument in appellate briefs, expressly limits the argument portion of a brief "to those errors included in the 'Points Relied On.'" *Osthus v. Countrylane Woods II Homeowners Ass'n,* 389 S.W.3d 712, 716 (Mo. App. E.D. 2012). "Issues not encompassed by the point relied on and raised only in the argument portion of the brief are not preserved for review." *Cordes v. Williams*, 201 S.W.3d 122, 131 (Mo. App. W.D. 2006).

Harmony's second Point Relied On states, "[t]he Board of Adjustment erred in upholding [*sic*] Stop Work Order because the City did not have a lawful basis for issuing it under Section 405.400 of the Code in that it never alleged or proved that Harmony Pointe violated any provisions of the [Final Plan]."[9] Harmony Brief, pp. 13, 17.

Harmony's Point Relied On is that the City did not have any lawful basis for issuing the Stop Work Order because the City "never alleged or proved that Harmony Pointe violated any provision of the [Final Plan]." Harmony Brief, pp. 13, 17. Thus, all arguments

---

[9] Harmony stated that the City never alleged or proved that Harmony violated any provisions of the ***Area Plan***, however, the Area Plan is not at issue in this appeal. Harmony Brief, pp. 13, 17.

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - August 21, 2024 - 06:00 PM

raised under Harmony's Second Point must be limited to the City's purported failure to allege or prove that Harmony violated the Final Plan. However, the issues raised in Subpart D of Point II are not related to the City's purported failure to allege or prove that Harmony violated any provision of the Final Plan. Harmony Brief, p. 20. Rather, Subpart D is related to the facial validity of the Stop Work Order, in that Harmony asserts that Section 405.400 of the Code "Did Not Authorize the City to Issue a Stop Work Order With No Means of Being Lifted, Either." *Id.*

Because the arguments raised in Subpart D are related to issues not encompassed within the Point Relied On, the Court should not review the issues discussed therein. *Cordes*, 201 S.W.3d at 131.

C.  **Alternatively, and Notwithstanding the Arguments Presented in Part B Above, The Stop Work Order is Not Facially Invalid As Claimed By Harmony.**

Harmony argues that "the City had no right to stop work indefinitely with no means of lifting the ban." Harmony Brief, p. 20. In fact, as stated by Harmony, pursuant to Section 405.400 of the Code, the Stop Work Order is only valid "until the violation is removed, or the area plan and/or final plan is otherwise complied with." Harmony Brief, p. 20.

Harmony has a simple means to "lift the ban." Harmony could cure the violation by obtaining approval of a new Final Plan and the Stop Work Order would be lifted. However, Harmony has failed to remedy the issue and cure the violation. Therefore, the Stop Work

Order remains in effect. The City should not be punished for Harmony's failure to even attempt to cure the violation.

Moreover, in Subpart D of Point II, Harmony appears to read into the Code additional requirements for the issuance of the Stop Work Order, including: (1) explaining to Harmony how it could remedy its violation; (2) providing an expiration date; and (3) expressly stating that the Stop Work Order is appealable. Specifically, Harmony stated:

> Therein [the Stop Work Order], the City prohibited "any construction work or related activity" entirely. No expiration date was given. No conditions for resuming construction was given, either. Apparently, Harmony cannot proceed with the Development now or ever in the future. Underscoring that point, the City said nothing in the Stop Work Order about any rights to appeal the issue as well. Stop work immediately, stop work forever.

Harmony Brief, p. 20.

Section 405.400 of the Code, cited above, does not require that the Stop Work Order provide an expiration date, expressly state how Harmony can remedy its violations, or provide Harmony with the list of rules of how it can assert an appeal of the same. Moreover, such arguments are illogical.

First, a stop work order is not required to provide an express expiration date. If that were true, any issue necessitating a stop work order would never be cured. The recipient of the stop work order would need only wait until the expiration date of such order to resume work.

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - August 21, 2024 - 06:00 PM

Second, even if the Stop Work Order was required to expressly state how Harmony can remedy the violation of the Final Plan, the Stop Work Order complied with that requirement. Namely, the Stop Work Order quoted the entirety of Section 405.400. *See* D92, pp. 16-17. Harmony's failure to review or, apparently, understand, Section 405.400 of the Code does not negate the fact that the Stop Work Order remained valid until such time that Harmony removed or cured its violation.  D92, pp. 16-17. The City cannot help the fact that Harmony never attempted such action.[10]

Finally, Section 405.400 does not require that the Stop Work Order expressly provide an explanation of the method to appeal.  However, it is telling that Harmony in fact did appeal the Stop Work Order.  D91, pp. 4-39.   Further, in Subpart D, Harmony referenced its conditional use permit and building permit obtained as part of this Project, stating that the Stop Work Order cannot "undo" those approvals.  Harmony Brief, p. 21. As is evident on its face, the Stop Work Order does not attempt to undermine the validity of the conditional use permit or building permit, and those items, while related, are not the

---

[10] At the Board of Adjustment hearing, Harmony argued that Section 500.040(A)(14) of the Code applied to the validity of this Stop Work Order. *See* D91, pp. 9-10. Harmony asserted that the Code requires the City to: (1) state the reasons for the order; and (2) state the conditions under which work can resume. *Id*. However, the City, in its brief and argument before the Board of Adjustment, addressed these issues, explaining why Harmony's position is incorrect. *See* D92, pp 41-42.  Moreover, the City showed that even if that section applied, the Stop Work Order complied with the requirements thereof. *See id*. In its Findings of Facts and Conclusions of Law, the Board of Adjustment agreed with the City, finding that: (1) Section 500.040(A)(14) of the Code does not apply; and (2) even if it did, the Stop Work Order was compliant. *See* D150, p. 29, ¶¶ S and T. The arguments raised in this portion of Harmony's Brief are another attempt at asserting the same claims already rejected.

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - August 21, 2024 - 06:00 PM

basis of this appeal.  D92, pp. 16-17.  However, it is worth noting that the conditional use permit and building permit both expired for reasons outside of this appeal, and thus, are not discussed substantively in this brief.  *See*, D150, pp. 30-32.[11]

Simply put, Harmony's arguments in Subpart D of Point II should be ignored by this Court.  However, to the extent the Court reaches the merits of the same, the arguments should be stricken or disregarded, as they impermissibly read requirements into the Code that are not present and have no bearing on the facial validity of the Stop Work Order.

## **CONCLUSION**

For the reasons presented above, Respondents request this Court find in their favor and vacate the Circuit Court judgment, affirm the Board of Adjustment's decision to uphold the Stop Work Order, and grant such other and further relief as is just and proper under the circumstances.

Respectfully submitted,

HAMILTON WEBER LLC

/s/ *Jared D. Howell*
Jared D. Howell      #67332
200 North Third Street
St. Charles, MO  63301
(636) 947-4700
(636) 947-1743 Facsimile
jhowell@hamiltonweber.com
*Attorney for Respondents*

---

[11] Similar to the Final Plan, Harmony's building permit and conditional use permit expired based upon Harmony's lack of progress at the Property. D150, p. 30-32. Like the Final Plan, the City's Code requires that certain activities occur within specific timeframes in order for building permits and conditional use permits to remain valid. *Id.* Harmony did not comply with these timeframes. *Id.* However, the City did not raise the expiration of these items in the Stop Work Order that forms the basis of this appeal, and thus, they are not relevant to the zoning issues presented herein.  D164.

Electronically Filed - EASTERN DISTRICT CT OF APPEALS - August 21, 2024 - 06:00 PM

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served this 21st day of August 2024, by means of the Notice of Electronic Filing to the below and that he signed and retained the original pursuant to Rule 55.03(a):

John Bradford Goss,   #36266
Daniel S. Peters, #43416
Elizabeth Lum, #59375
SMITHAMUNDSEN LLC
7711 Carondelet Ave. Suite 800
Clayton, MO  63105
(314) 719-3700 /F: (314) 719-3710
bgoss@amundsendavislaw.com
dpeters@amundsendavislaw.com
elum@amundsendavislaw.com

*Attorneys for Appellants*

*/s/* Jared D. Howell

## CERTIFICATE OF COMPLIANCE

I hereby certify:

1.    That the attached Respondent's Brief includes the information required by Rule 55.03, complies with the limitations contained in Supreme Court Rule 84.06(b) and Eastern District Local Rule 360(a), in that the Brief contains 5773 words, exclusive of the cover, certificate of service, certificate required by Rule 84.06(c), signature block, Table of Contents and Table of Authorities as determined by Microsoft Office Word software;

2.    Respondent's Brief has been prepared in a proportionally spaced typeface using Microsoft Word in 13-point Times New Roman; and

3.    That a true and correct copy of the attached Respondent's Brief was served on the opposing party by the Court's electronic filing system on this 21st day of August, 2024.

*/s/* Jared D. Howell