**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| HARMONY POINTE, LLC, | ) | |
| | ) | Case No.: 4-26:cv-00011-PLC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF COTTLEVILLE, MISSOURI, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OMNIBUS MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT**

Plaintiff Harmony Pointe, LLC ("Plaintiff"), by and through its undersigned counsel, and for its Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss Plaintiff's Complaint, states:

**INTRODUCTION**

In their motions to dismiss, Defendants Michael Padella, Mike Krekeler, Michael Guccione, Emilie Colombatto, John Gnau, Robert Ronkoski, Richard Francis (collectively, the "Individual Defendants"), and the City of Cottleville, Missouri (the "City") (all collectively, the "Defendants") misconstrue Plaintiff's cause of action as a run-of-the-mill state-law zoning dispute. As Defendant's would have this Court believe, Plaintiff's claim is akin to that in *Chesterfield Development Corp. v. City of Chesterfield*, 963 F.2d 1102 (8th Cir. 1992), where a municipality illegally adopted a zoning ordinance at a hearing held on thirteen (13) days' notice, instead of the fifteen (15) days required by Missouri law. To the contrary, the conduct alleged in Plaintiff's Complaint is significantly more appalling. After they granted Plaintiff all necessary approvals and permits to construct a large multi-family development, Defendants schemed to prevent Plaintiff from exercising those rights, going so far as to ignore a judgment from the Circuit Court for St.

Charles County, Missouri and an opinion from the Missouri Court of Appeals.   That is, this is not a zoning dispute case under state law.  Instead, this is a case involving a violation of Plaintiff's constitutionally-protected due process rights based on Defendants' truly irrational refusal to comply with court orders.  Likewise, Defendants misconstrue the law regarding Plaintiff's other claims.

As set forth in detail in this Opposition, Plaintiff properly and sufficiently pleads claims for denial of its due process rights in violation of 42 U.S.C. § 1983 (Count I) and a taking of property without just compensation (Count II) based on Defendants' secret and illegal attempts to stop Plaintiff from constructing a multi-family housing development in violation of multiple court orders. Defendants' Motions to Dismiss should be denied.[1]

## **LEGAL STANDARD**

When considering a motion to dismiss under Rule 12(b)(6), the court must assume the factual allegations of the complaint to be true and construe them in favor of the plaintiff. *Johnson v. McDonald Corp.*, 542 F. Supp. 3d, 888, 890 (E.D. Mo. 2021). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2007) (internal quotations omitted)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Specific facts are not necessary; the plaintiff must allege sufficient facts to "give fair notice of what the claim is and grounds upon which it rests." *Johnson*, 542 F. Supp. 3d at 890 (internal quotations omitted) (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). "A complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* (citing *Twombly*, 550 U.S. at 555) (internal quotations omitted). The standard "simply calls for enough

---

[1] To the extent the Court determines that Plaintiff has failed to plead necessary factual allegations, Plaintiff requests leave to file a first amended complaint.

2

facts to raise a reasonable expectation that discovery will reveal evidence of the claim or element," not to determine whether the plaintiff will "ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim." *Id.* (internal quotations omitted).

Under Rule 12(b)(1), plaintiff bears the burden of showing that subject matter jurisdiction exists. *Buckler v. U.S.*, 919 F.3d 1038, 1044 (8th Cir. 2019). In determining whether subject matter jurisdiction is proper, the court may look "outside the pleadings" to conduct its review, and may receive evidence by "any rational mode of inquiry." *Id.* (citing *Osborn v. U.S.*, 918 F.2d 724, 730 (8th Cir. 1990)). "Ultimately, the court must rule upon the jurisdictional issue unless it is so bound up with the merits that a full trial on the merits may be necessary to resolve the issue." *Id.* (citing *Crawford v. U.S.*, 796 F.2d 924, 928 (7th Cir. 1986)) (internal quotations omitted).

## **ARGUMENT**

I. <u>The Individual Defendants are not protected by qualified immunity because they violated Plaintiff's clearly established constitutional rights.</u>

The Individual Defendants argue that Count I of the Complaint should be dismissed because they have qualified immunity. *See generally* Defendants' Memoranda in Support, pp. 5-7. However, the Individual Defendants are not protected by qualified immunity because the Complaint alleges that they violated Plaintiff's clearly established constitutional rights in bad faith.

Government officials performing discretionary functions are generally shielded from civil liability if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Statutory or constitutional rights are "clearly established" if the law was in place, rather than subsequently enacted, at the time of the alleged violation. *Id.* "Actual knowledge of the law is not required; if the law is clearly established, the qualified immunity defense will fail unless the official claims extraordinary circumstances and can prove that he neither knew nor should have known of

the relevant legal standard." *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989) (*citing Harlow*, 457 U.S. at 818-19)) (internal quotations omitted). The limits of qualified immunity are determined using "objective legal reasonableness" and with the consideration of the public's interest in "deterrence of unlawful conduct and in compensation of victims" who have a legitimate cause of action. *Harlow*, 457 U.S. at 819.

Plaintiff's Complaint is replete with allegations that the Individual Defendants violated Plaintiff's clearly established constitutional rights. In the section titled "Individual Defendants' Attempts to Stop the Development," Plaintiff alleges that the Individual Defendants secretly and under false pretenses subverted Plaintiff's constitutional rights through issuance of the First Stop Work Order to prevent any development of the Property. *See* Compl., ¶¶ 35-47. Plaintiff further alleges that the Individual Defendants acted in violation of a court order and specifically made the same improper arguments presented to the Circuit Court of St. Charles County to issue the Second Stop Work Order. *Id.* at  ¶¶ 53-69. Finally, Plaintiff alleges the Individuals violated yet another court order to issue to Third Stop Work Order, again relying on the same failed arguments that were struck down by Missouri state courts. *Id.* at  ¶¶ 70-89.  Plaintiff believes that discovery will show that the Individual Defendants were specifically involved in the issuance of the Second and Third Stop Work Orders, as they were with the First Stop Work Order.

The case of *Slone v. Herman* is instructive here.  983 F.2d 107 (8th Cir. 1993).  In *Slone*, a criminal defendant was convicted of armed criminal action and sentenced to a prison term.  *Id*. at 108.  After he was remanded to the custody of the Missouri Department of Corrections ("DOC"), the sentencing judge entered an order suspending the convict's sentence and placing him on probation.  *Id*.  The state took no action within the required time and the order became final and non-appealable.  *Id*.  The DOC did not release the convict because it did not believe that Missouri

4

law authorized his release, despite the court order. *Id.* at 108 – 09. Nearly eight (8) months later, the convict was released and he brought suit against various DOC officials, who all claimed qualified immunity. *Id.* The DOC officials argued that the convict did not have a clearly established right to be released from prison because the law concerning the judge's power to issue the probation order was not clear. *Id.*

On appeal, the Eighth Circuit clearly explained that the DOC officials' arguments missed the mark. The question under qualified immunity is whether the plaintiff "had a clearly established right" once the judge's order became final and nonappealable, not whether the order "was based on clearly established law." *Id.*

The same analysis is applicable here. The Second and Third Stop Work Orders are based on alleged deficiencies which were resolved in the favor of the City by the Board of Adjustment's written decision on the First Stop Work Order. That decision was appealed to the Circuit Court, which entered judgment against the City and reversed the entirety of the written decision. Despite this loss, Defendants issued the Second Stop Work Order on the exact same grounds which had already been rejected by the Court. The City appealed the judgment, and lost again. But instead of complying with the final, nonappealable judgment, Defendants doubled down and continued to prevent Plaintiff from developing the project. As explained in *Slone*, it was objectively unreasonable for Defendants to refuse to comply with a Court order once it became final and nonappealable. *Id.* at 110. Because their refusal was objectively unreasonable, qualified immunity does not apply. Therefore, Defendants' Motions to Dismiss should be denied.

II. Defendants violated Plaintiff's due process rights by using their positions to irrationally deprive Plaintiff of its property interest.

Defendants' argument that Count I of the Complaint is a zoning dispute claim couched as a substantive due process claim is a red herring. *See generally* Defendants' Memoranda in Support,

5

pp. 7-8. Plaintiff's claim for violation of 42 U.S.C. § 1983 (Count I) is founded upon Defendants' violation of Plaintiff's constitutionally protected property interest in the Final Plan for the Development and in the City's compliance with the Development Agreement.

The Fourteenth Amendment of the U.S. Constitution creates a "procedural protection of property" as a "safeguard of the security of interests that a person has already acquired in specific benefits." *The Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972). A substantive due process claim under Section 1983 requires a plaintiff to allege that "a government action was sufficiently outrageous or truly irrational, that is, something more than arbitrary, capricious, or in violation of state law." *Becker v. City of Hillsboro, Mo.*, 667 F. Supp. 3d 996, 1002 (E.D. Mo. 2023) (citing *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 628 (8th Cir. 2001)).

There is a not a zoning dispute in this case and the cases cited by Defendants do not apply to the present facts. Rather, this is a case where the Defendants unconstitutionally interfered, in a truly irrational manner, with Plaintiff's rights. As the Complaint states, the City approved and agreed to the Final Plan for the Development, entered into the Planned Unit Development Agreement, and Plaintiff began construction shortly thereafter. *See* Compl., ¶¶ 19-34(a)-(h). The basis of Plaintiff's claim for violation of substantive due process against Defendants is that they irrationally and without reason prevented Plaintiff from developing the property under false pretenses and in contravention of multiple court orders. *Id.* at ¶¶ 35-47, 53-69, 70-89, 104-121. These actions were truly irrational, and rise to the level of a constitutional violation, because Defendants secretly and under false pretenses issued the First Stop Work Order, and acted in contravention to multiple court orders advocating failed legal arguments to issue the Second and Third Stop Work Orders. *Id*.

All the authorities cited by Defendants fail to include anything resembling the facts alleged

6

here, namely that Defendants used government to specifically target and violate Plaintiff's substantive due process rights. *See Chesterfield Dev. Corp.*, 963 F.2d at 1104-05 (illegal adoption of a zoning ordinance without proper notice); *Myers v. Scott County*, 868 F.2d 1017, 1018 (8th Cir. 1989) ("deviations" from proper procedure in the investigation of child sexual abuse); *Grove Assisted Living, LLC v. City of Frontenac*, 2018 WL 3093520 at *7-8 (E.D. Mo. 2018) (moratorium then eventual re-zoning after developer's plan was submitted for approval).

This case is much more similar to the example of a substantive due process violation given by the 8th Circuit in *Chesterfield Dev. Corp.*, which is the application of a zoning ordinance only to persons with last names that begin with the first half of the alphabet. 963 F.2d at 1104. The refusal to comply with court orders is just as irrational, except here, Defendants' irrational behavior is even more narrow because Defendants only applied their irrational behavior to a single entity, Plaintiff.  Indeed, this case is very similar to *Furlong Companies, Inc. v. City of Kansas City*, 189 S.W.3d 157 (Mo. banc 2006), the seminal case regarding truly irrational conduct under Missouri law.  There, Missouri's supreme court found that a city's refusal to exercise its ministerial duty to approve a subdivision plat amounted to truly irrational conduct where the city caused numerous delays and ultimately denied the plat, when the law clearly required it to approve the plat.  *Id*. at 170–71.  Here, the same is true.  Defendants were instructed by the Circuit Court and the Court of Appeals that their bases for issues the stop work orders were without merit.  Despite this, they continued to delay the project and prevented its development.  Therefore, Defendants' Motions to Dismiss should be denied.

       III.     <u>The Individual Defendants personally violated Plaintiff's constitutional rights and may be sued in their individual capacities.</u>

The Individual Defendants again misinterpret precedent to argue that they must personally sign the Stop Work Orders to be liable under Section 1983. *See* Defendants' Memoranda in

7

Support, pp. 8-10. The Individual Defendants cite *Iqbal* and *Parrish v. Ball*, 594 F.3d 993, 1001, (8th Cir. 2010), for the proposition that government officials may not be held liable for the unconstitutional conduct of their subordinates under a *respondeat superior* theory. Plaintiff makes no such claim.

Instead, Plaintiff alleges that the Individual Defendants are liable in their individual capacities under Section 1983 because they deprived Plaintiff of its federal rights under color of state law, by their actions. *See Pitts v. City of Cuba*, 913 F. Supp. 2d 688, 708 (E.D. Mo. 2012). "Thus, in order to state a cognizable Section 1983 claim, a complaint must set forth specific factual allegations showing what each named defendant allegedly did, or failed to do, that allegedly violated the plaintiff's federal constitutional rights." *Id.* For example, in *Fortner v. City of Archie, Mo.*, 70 F. Supp. 2d 1028, 1030 (W.D. Mo. 1999), the court held a government official may be held liable under Section 1983 even if they are not permitted to take part in the decisions that form the basis of a plaintiff's complaint. (" . . . his official duties are to preside over the meetings of the Board of Alderman, although he does not get to vote. As president officer however, this Court is certain that he can and does influence the Board on the issues in front of it while acting in his official capacity.").

Plaintiff's Complaint expressly alleges that the Individual Defendants used their positions to participate in secret meetings and issue the Stop Work Orders under false pretenses and in contravention of multiple court orders. *Compl.*, ¶¶ 35-47, 53-69, 70-89, 104-121.  While all of Defendants did not sign each stop work order, Plaintiff has pleaded the necessary specificity to put Defendants on notice that it is Plaintiff's position that Defendants were involved in the illegal determination to issue the stop work orders.  For instance, Defendants held a secret meeting where they decided to direct Francis and Ronkowski to issue the First Stop Work Order.  Plaintiff believes

that discovery will show that Defendants were involved in the decisions to issue the Second and Third Stop Work Orders.  Further, once a sufficient number of Defendants had been removed from office, the City finally revoked the stop work orders, which tends to show that Defendants were each involved with the issuance thereof.  Plaintiff has pleaded the elements set forth in *Pitts*.[2] Therefore, Defendants' Motions to Dismiss should be denied.

IV.   Defendants' Second and Third Stop Work Orders constitute regulatory takings.

Defendants next argue that Plaintiff's Complaint fails to state a takings claim (Count II). *See* Defendants' Memoranda in Support, pp. 10-12. This argument also fails because Plaintiff properly pleads Defendants' issuance of the Second and Third Stop Work Orders constitute compensable regulatory takings.

The Takings Clause of the U.S. Constitution, as applied to the States through the Fourteenth Amendment, provides protections to property owners from the imposition of regulations by a government that restrict an owner's ability to use or benefit from their own property. *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147-48 (2021). A "taking" can occur through physical means such as when the government "physically takes possession of property without acquiring title," and a "regulatory taking" through the imposition of use regulations that "go too far" such that it deprives a property owner of its constitutional rights. *Id.* at 147-49. Both physical and regulatory takings are governed by the Takings Clause but federal law has created separate analyses to determine whether a taking has occurred. *Id.*

Plaintiff alleges that Defendants' actions constitute a compensable regulatory taking and the Complaint sufficiently pleads the factors set forth in *Penn Cent. Transp. Co. v. City of New*

---

[2] Individual Defendants have not attempted to claim legislative immunity.  Even if they did, such a defense would be without merit because the decision to issue the stop work orders was not a legislative action.  *See Fortner*, 70 F.Supp.2d at 1029–30.

*York*, 438 U.S. 104 (1978).  In *Penn Central*, the U.S. Supreme Court set forth three factors relevant to determine whether a government regulation constitutes a taking: (1) the economic impact on the claimant; (2) interference with investment-backed expectations; and (3) the character of the governmental action. *Id.* at 124. Investment-backed expectations must be "more than a unilateral expectation or an abstract need" and part of the consideration of the government's character is whether the government's action constitutes a "physical invasion" or affects property rights through a public program to promote the common good. *Becker v. City of Hillsboro, Mo.*, 125 F.4th 844, 858-59 (8th Cir. 2025).

Plaintiff satisfies the first factor by alleging the drastic economic impact the Second and Third Stop Work Orders have on its ability to develop the project in line with the approval already obtained by Plaintiff, such that certain costs have tripled. *See* Complaint, ¶¶ 4, 97-103, 122-129. The second factor is also met through Plaintiff's claims that Defendants interfered with its ability to develop and finance the property and its expectations for profits have been significantly reduced, if not eliminated. *Id.* Finally, Defendants' actions were in bad faith and are akin to a physical invasion, i.e., deprivation of Plaintiff's property rights, rather than the enactment of a program to promote the public good.  Ironically, Defendants had previously determined Plaintiff's multi-family development promoted the public good when they approved Plaintiff's PUD application and approved the necessary permits to allow Plaintiff to construct the project. *Id.* Thus, Plaintiff's Complaint meets its burden under *Penn Central* and Defendants' Motions to Dismiss should be denied.

> V.     <u>Defendants' argument that Plaintiff failed to exhaust its administrative remedies and that Plaintiff's claims here are not ripe fail.</u>

Defendants argue that Plaintiff's Complaint should be dismissed because Plaintiff was required to, and failed to, exhaust its administrative remedies.  This argument fails from the outset,

as the Supreme Court has previously held that "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to 1983." *Patsy v. Board of Regents of State of Fla.*, 457 U.S. 496, 516 (1982); *see also Kuhlmeier v. Hazelwood School Dist.*, 578 F. Supp. 1286, 1295 (E.D. Mo. 1984) ("[E]xhaustion of administrative remedies is not a prerequisite to an action under § 1983."). Indeed, the very cases that Defendants have provided to this Court clearly and frankly state that there is no such requirement. *Jeffco Estates, LLC v. City of Arnold Board of Adjustment*, 4:23-cv-00282, 2023 WL 9023173, at *7 (E.D. Mo. Dec. 29, 2023) ("The doctrine of ripeness, not exhaustion of administrative remedies, is applicable here."); *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 192 (1985) (acknowledging that "there is no requirement that a plaintiff exhaust administrative remedies before bringing a § 1983 action.").

Even if there were such a requirement, Defendants have failed to show that Plaintiff had an administrative remedy it was required to pursue. Defendants argue that the Court should dismiss Plaintiff's Complaint pursuant to *Owydat v. City of St. Louis*, 4:20-CV-388 NAB, 2023 WL 245555 (E.D. Mo. Jan. 18, 2023) and *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070 (8th Cir. 2016). *Owydat* was a case where a plaintiff brought constitutional claims following a board of adjustment's refusal to set aside a municipality's revocation of permits for the plaintiff's gas station. 2023 WL 245555, at *2–3. The Court found that R.S.Mo. § 89.110, and Missouri law discussing that section, set the exclusive remedy for challenging the decision of a board of adjustment as a writ of certiorari. *Id*. at *4–7. Since a writ of certiorari was the plaintiff's exclusive remedy, the Court dismissed the federal constitutional claims and remanded the remaining claims to the state court. *Id*. at *7–8.

*Kelly* came to a similar conclusion. There, a plaintiff brought claims against a municipality

11

and its agents under § 1983 for "depriving her of liberty and property without due process of law, imposing housing standards that are arbitrary and unknown, demanding sexual favors to stop arbitrary enforcement of Omaha's housing laws, and engaging in illegal trespasses and searches of her properties." 813 F.3d at 1075. The Court dismissed her claims for numerous reasons, but as to the portion of her claims regarding fines and citations levied against her and her rental properties, the Court found that she was required to appeal those penalties to a building board of review pursuant to Omaha's municipal code. *Id*. at 1077.

Neither *Owydat* nor *Kelly* support Defendants' position. Defendants have not pointed to a single statute or ordinance that required Plaintiff to appeal the Second or Third Stop Work Order to the Board of Adjustment. Section 89.110 is not applicable here, as it was in *Owydat*, as that section of Missouri law applies only to decisions of a board of adjustment, not stop work orders. The only authority cited by Defendants is City Code § 400.090, which they claim states that "challenges to the issuance or enforcement of stop work orders must be pursued through an administrative appeal to the Board of Adjustment before judicial review is available." [Doc. 37 at p. 10]. Curiously, Defendants have not supplied the Court with a copy of City Code § 400.090, which Plaintiff has attached as Exhibit A. Nothing in this section requires Plaintiff to appeal stop work orders to the Board of Adjustment. Indeed, Section 400.090 does not require any person to appeal any decision to the Board of Adjustment; that section only gives the Board of Adjustment authority to hear appeals and discusses how appeals are resolved.

Some provisions of the City's Code do require appeal before seeking judicial review. For instance, Section 420.050.F requires that any request for a variance from the City's floodplain requirements must be presented to the Floodplain Manager, who will present it to the Board of Adjustment, and, if denied, must be appealed to the Board of Aldermen before seeking judicial

12

review.  Similarly, Section 405.160 requires that any person aggrieved by a decision of the Old Town Historic District Commission appeal that decision to the Board of Aldermen.  The City's Code does not contain any requirements that a stop work order be appealed to the Board of Adjustment before seeking judicial review, as was the case with the actions taken by municipalities in *Owydat* and *Kelly*.  Sections 405.140, 405.400, and 500.340, which are the sections that deal with stop work orders, do not include any appeal requirement.  [Exhibit B].  Since there is no requirement in the City's Code that Plaintiff appeal the Second and Third Stop Work Orders, they had no administrative remedies to exhaust.

     VI.     <u>Plaintiff's claims Are ripe</u>.

Defendants' ripeness argument lacks any real analysis.  In the two, short paragraphs Defendants provide, they suggest that because this case involves constitutional land use claims, Plaintiff was required to appeal the Second and Third Stop Work Orders to the Board of Adjustment.  Since Plaintiff did not, Defendants argues that the claims should be dismissed for ripeness.  Notably, Defendants' argument is supported only by two (2) unreported district court cases, both of which are easily distinguishable from the present facts.

First, Defendants rely on *Jeffco Estates*.  *Jeffco Estates* is a case involving non-conforming uses and a city's refusal to grant permits for the construction of new mobile homes on non-conforming lots.  2023 WL 9023173, at *1–2.  When the city denied the request for permits, the plaintiff sought review of that decision by the board of adjustment but did not seek a variance.  *Id*. at *3.  The board of adjustment upheld the city's determination on the permits, and the plaintiff filed a declaratory judgment action with one 1983 claim based on equal protection (not due process).  *Id*. at *5.  The Court, in reliance on *Willaimson* and *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 737 (1997), found that, "generally, a developer must at least resort to the procedure for obtaining variances and obtain a conclusive determination by the Commission whether it would

13

allow the proposed development in order to ripen its takings claim." *Id*. at *9 (internal quotations omitted). Therefore, the Court dismissed the plaintiff's claims for a lack of ripeness, since the developer did not seek variances.

A similar conclusion was reached in *Saba v. City of Farmington*, 4:05-cv-02000, 2006 WL 897153 (E.D. Mo. March 31, 2006). There, a property owner was issued a permit to build a fence. *Id*. at *1. Six (6) days later, a neighboring property owner was issued a permit to build a fence along the same boundary. *Id*. The neighbor built his fence first and the property owner built his fence as close as possible to the neighbor's fence, in contravention of the city's code which prohibited the construction of a fence within two (2) feet of a parallel fence. *Id*. The Court dismissed the 1983 action finding it was not ripe, since the property owner had not requested a variance from the City's code. *Id*. at *2.

Neither *Jeffco* nor *Saba* are similar to the case here. In those cases, the plaintiffs sought to develop land and after they were denied permits, they failed to seek a variance before filing suit. Here, the facts are markedly different. Plaintiff received all of the approval that was needed to develop the Project. Then, Defendants issued stop work orders on bases that were all found to be illegal. That decision became final, but despite that, Defendants persisted in threating Plaintiff with criminal prosecution if it attempted to develop the Property. There is nothing in the City Code that allows a variance for stop work orders. Further, any administrative process would be moot, as the City has already removed the Second and Third Stop Work Orders. The issue is that these illegal stop work orders have caused significant delay to the Project and made it uneconomical to complete, causing serious injury to Plaintiff.

While Defendants cite only unreported district court cases, there are other reported Eighth Circuit cases that discuss the finality requirement. For example, in *Christopher Lake Development*

14

*Co. v. St. Louis County*, 35 F.3d 1269, 1270–71 (8th Cir. 1994) a developer sought to develop forty-two acres of property into two residential developments. The developer received initial approval, but complained about the county's requirements for stormwater handling. *Id*. at 1271. Essentially, the developer believed that the stormwater requirements caused it to invest in a drainage system for the entire watershed area, instead of just for its development. *Id.* The county denied the plans and the developer applied for a hardship exemption, which was referred to the Public Improvements Committee ("PIC"). *Id*. At the PIC hearing, the developer was told that it would be required to pay the upfront cost for the drainage system, but would (somehow) receive reimbursement for the benefit to neighboring property owners. *Id*. at 1272.

The developer filed suit and the district court dismissed the case because it found that the decision was not final, because the developer did not seek a variance. *Id*. The developer sought a "variance," which was denied by the county because the drainage system was already complete. *Id*. The developer filed a second lawsuit and the county moved to dismiss, arguing that the "claims were not ripe and could never be ripe because the … construction of the storm water relief system precluded the County from ever reaching a final decision[.]" *Id.* The district court dismissed the as-applied challenges as unripe and the developer appealed. *Id*.

On appeal, the Eighth Circuit explained the standard for determining if an as-applied 1983 land use claim is ripe, pursuant to *Williamson*. *Id*. at 1273. "A claim that the application of government regulations effect a taking of property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id*. There is not a hard-and-fast rule that a developer must seek a "variance" of every land use decision. Instead, "in order for as applied arbitrary and capricious due process claims … to be ripe, the particular zoning decision being challenged must

15

be finally applied to the property at issue." *Id.*  That is, the ultimate question is whether the municipality has "arrived at a definite position" on the application of its Code to the subject property "that inflicted an actual, concrete injury" to the property owner. *Id.*

In *Christopher Lake*, the Eighth Circuit found that the county had reached a final decision, as the developer had made a valid request for hardship relief, which was denied.  Therefore, the Eighth Circuit found that developer was not required to seek additional relief from the Board of Adjustment. *Id*. at 1274.

The situation is similar here.  After the First Stop Work Order was issued, Plaintiff sought review before the Board of Adjustment.  The Board of Adjustment found in favor of the City on the bases raised in the First Stop Work Order, and also on the issues of the conditional use permit and certificate of appropriateness which were raised in the Second Stop Work Order.  The Circuit Court reversed the entire decision of the Board of Adjustment, which was upheld on appeal.  After the Circuit Court set aside the Board of Adjustment's decision, Defendants issued the Second Stop Work Order which was based on grounds already rejected by the Circuit Court.  Plaintiff explained to Defendant that the issues raised in the Second Stop Work Order had already been resolved by the Circuit Court, but Defendant refused to remove the Second Stop Work Order and specifically referenced that the issue was on appeal.  After the Court of Appeals issued its opinion that the Judgment was correct and the Board of Adjustment decision was set aside, Defendants issued the Third Stop Work Order, despite the fact that the Judgment was now final.

Here, the decision of the City regarding the Second and Third Stop Work Orders were sufficiently final to provide this Court with subject matter jurisdiction.  The issues in the Second and Third Stop Work Orders had already been fully litigated to a final judgment, which was affirmed on appeal.  Causing property owners to continually appeal new land use decisions which

16

have already been dispositively ruled upon would create a perverse incentive for municipalities to issue new actions to prevent judicial review of their decisions.  Additionally, administrative review of the Second and Third Stop Work Order is moot at this point, as the City has revoked the Second and Third Stop Work Order.  Revoking the stop work order should not allow Defendants to escape liability for their actions, by claiming it is impossible for the case to become ripe.  Instead, these legal issues are sufficiently ripe for adjudication.

Moreover, the Court should consider the issue preclusion effect of the final judgment on the First Stop Work Order.  As explained in *Plough By and Through Plough v. West Des Moines Comm. School Dist.*, 70 F.3d 512, 515 (8th Cir. 1995), in 1983 cases federal courts are required to give administrative decisions the same preclusive effect that they would have in state courts, as long as the factors set forth in *University of Tenn. v. Elliott*, 487 U.S. 788, 799 (1986) are met.  The *Elliot* factors are all met here.  For the first factor, the Board of Adjustment acted in a judicial capacity when it reviewed Plaintiff's appeal of the First Stop Work Order.  The second factor is met because the exact same issues presented to the Board of Adjustment are set out as the support for the Second and Third Stop Work Orders.  The Second and Third Stop Work Orders purported to require Plaintiff to stop work on the project because its conditional use permit and certificate of appropriateness had expired.  [Doc 1, Ex. D].  In its written decision, the Board of Adjustment ordered that the First Stop Work Order was properly issued, in part because Plaintiff's conditional use permit and certificate of appropriateness had expired.  [Doc. 1, Ex. E, ¶¶ HH – RR].  These determinations were reversed and vacated by the judgment of the Circuit Court, which was upheld on appeal.  [Doc. 1, Exs. F & L].  Since the legal issues raised in the Second and Third Stop Work Orders are identical to the issues resolved in the administrative proceedings for the First Stop Work Order, the second *Elliot* factor is satisfied.  The last factor is also satisfied because the parties had

17

an adequate opportunity to litigate the facts underlying the appeal during the Board of Adjustment's review.  This factor is clearly satisfied, as the parties had the opportunity to litigate these issues before the Board of Adjustment, an appeal to the Circuit Court, and a further appeal to the Court of Appeals.  Since the final judgment on the First Stop Work Order bars Defendants from relitigating those issue through the Second and Third Stop Work Orders, the Court should find that Plaintiff's claim are ripe for adjudication.[3]

Moreover, the Court should consider whether appeal to the board of adjustment would be futile.  "An administrative remedy will be deemed futile if there is doubt about whether the agency could grant effective relief." *Bartlett v. U.S. Dep't of Agriculture*, 716 F.3d 464, 472-73 (8th Cir. 2013) (citing *Ace Prop. and Cas. Ins. Co. v. Fed. Crop Ins. Corp.*, 440 F.3d 992, 1000 (8th Cir. 2006)). An agency cannot grant proper relief if it lacks the authority to grant the type of relief requested. *Id.* Here, appeal to the Board of Adjustment would be futile because the City has already set aside the Second and Third Stop Work Order and because the Board of Adjustment only has authority to set aside actions of the City, not to award compensatory damages. *See* City Code § 400.090.C.  Forcing Plaintiff to further engage and re-litigate through the administrative process the Second and Third Stop Workers would truly be an exercise of futility as the Board of Adjustment would have arrived at the same conclusion as it did when presented with the appeal of the First Stop Work Order. Furthermore, the relief sought after the appeal of the First Stop Order is different and lesser than the relief Plaintiff now seeks due to the damages it's sustained as a result of the Second and Third Stop Work Orders. The Board of Adjustment cannot grant Plaintiff

---

[3] "The second prong that must be met for an issue to be ripe is the issue of "harm," i.e., the "traditional concept of actual damages—pecuniary or otherwise—and also the heightened uncertainty and resulting behavior modification that may result from delayed resolution." *Neb. Pub. Power Dist.*, 234 F.3d at 1038. Defendants do not really make an argument that Plaintiff has not been injured by the Second and Third Stop Work Orders.  Nonetheless, financial impact on a party is a clear example of harm. *See Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201-02 (1983).

18

effective relief, that is damages for the injuries caused by Defendants and the punitive damages sought to prevent and dissuade similarly situated individuals like Defendants in the future.  The Board of Adjustment could only set aside the Second and Third Stop Work Orders.

Finally, there is an exception for the finality requirement where "an issue is largely legal in nature . . . or where judicial resolution will largely settle the parties' dispute[.]" *Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 324 F.3d 1032, 1038 (8th Cir. 2000).   Here, the issues that Defendants claim are not ripe are entirely legal, that is, whether the Second and Third Stop Work Order are precluded by issue and/or claim preclusion, making the Defendants' actions truly irrational.

As previously stated, Plaintiff received a final decision from the Board of Adjustment when it appealed the First Stop Work Order, and the issuance of the Second and Third Stop Workers were the same basis as the First. As explained above, the issues raised in the Second and Third Stop Work Order were resolved by the administrative process on the First Stop Work Order. Despite this, Defendants refused to comply with the final judgment and only rescinded the Second and Third Stop Work Order when a new mayor and new aldermen were elected. Additionally, Plaintiff has suffered and continues to suffer harm as a result of Defendants' actions. *See* Compl., ¶¶ 4, 97-103.  Not only is the project significantly more expensive, it has become so expensive that the project cannot be economically completed, denying Plaintiff any value from the property rights it was originally granted by the City.  The financial impact on Plaintiff is significant, and judicial resolution is required to settle the dispute.

Therefore, Defendants' Motions to Dismiss should be denied.

## **CONCLUSION**

For the reasons stated above, Defendants' Motions to Dismiss should be denied.

19

Respectfully submitted,

**CAPES, SOKOL, GOODMAN & SARACHAN, P.C.**

By: */s/ Zachary R. McMichael*
Zachary R. McMichael, #68251MO
Karl A. Borgsmiller, #71796MO
8182 Maryland Ave., 15th Floor
St. Louis, MO 63105
(314) 505-5464 (telephone)
(314) 505-5465 (facsimile)
mcmichael@capessokol.com
borgsmiller@capessokol.com

*Attorneys for Plaintiff Harmony Pointe, LLC*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 18th day of March 2026, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system.


*/s/ Zachary R. McMichael*

20