**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **HARMONY POINTE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:26-cv-0011-PLC** |
| | ) | |
| **CITY OF COTTLEVILLE, MISSOURI, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on motions to dismiss filed by Defendants Richard Francis; Robert Ronkoski; John Gnau; Emilie Columbatto; Michael Guccione; Mike Krekeler; and Michael Padella (collectively "Individual Defendants") and City of Cottleville, Missouri ("City") seeking to dismiss Plaintiff Harmony Pointe's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). [ECF Nos. 18, 22, 24, 26, 30, 34 & 36] Plaintiff's complaint brings claims for alleged violations of its substantive due process rights under the Fourteenth Amendment; a *per se* physical taking under the Fifth Amendment; and a taking under the Missouri Constitution related to stop work orders issued by the City that prevented Plaintiff from constructing a mixed-use development on its property. [ECF No. 1]

In their motions to dismiss, Defendants argue Plaintiff's complaint fails to state either a Fourteenth Amendment substantive due process claim or a Fifth Amendment *per se* physical taking claim. [ECF Nos. 18, 22, 24, 26, 30, 34 & 36] Defendants request that the Court decline to exercise supplemental jurisdiction over Plaintiff's taking claims under the Missouri Constitution. [ECF Nos. 18, 22, 24, 26, 30, 34 & 36] In addition, Individual Defendants assert: (1) they are protected by qualified immunity, (2) Plaintiff's individual capacity claims fails for lack of personal

involvement, and (3) the takings claims may only be brought against government entities and not individuals. [ECF Nos. 18, 22, 24, 26, 30, 34] Plaintiff opposes the motions. [ECF No. 41] For the reasons stated below, the Court grants Defendants' motions and dismisses Plaintiff's complaint without prejudice.

## I. Background[1]

Plaintiff is the owner of real property located at 1503 Highway N, Cottleville, Missouri, 63304 (the "Property"). [ECF No. 1 ¶ 17] Defendant City is located in St. Charles County. [ECF No. 1, ¶ 6] Defendant Richard Francis was the City Administrator from 2016 until he was subsequently replaced by Defendant Michael Padella; Defendant Robert Ronkoski was Mayor of the City for the relevant period; and Defendants John Gnau, Emilie Columbatto, Michael Guccione, and Mike Krekeler were aldermen for the City during the relevant period. [ECF No. 1. ¶¶ 7-12]

In November 2021, Plaintiff submitted a Conditional Use Application and Planned Unit Development-Area Plan Application to the City for construction of a mixed-use development (the

---

[1] Typically, only the facts alleged in the complaint are considered in ruling on a 12(b)(6) motion. *Dow Chemical Co. v. G.S. Robins & Co.*, 2006 WL 3511494, at *2 (E.D.Mo.,2006). The Court, however, "may sometimes consider materials outside the pleadings, such as materials that are necessarily embraced by the pleadings and exhibits attached to the complaint." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

Plaintiff attached to its complaint, and specifically incorporated by reference, fourteen exhibits. This includes: (1) Ordinance No. 2008 passed by the Board of Aldermen [ECF No. 1-4]; (2) the Planned United Development Agreement ("Development Agreement") [ECF No. 1-5]; (3) a November 1, 2022 letter from the Assistant City Engineer [ECF No. 1-6]; (4) the May 19, 2023 letter ("First Stop Work") Order [ECF No. 1-7]; (5) the Board of Adjustment's July 20, 2023 order upholding the First Stop Work Order [ECF No. 1-8]; (6) the April 17, 2024 Judgment of the Circuit Court of St. Charles County [ECF No. 1-9]; (7) the April 23, 2024 letter ("Second Stop Work Order") [ECF No. 1-10]; (8) the City's brief in support of the Board of Adjustment's order filed in the St. Charles County Circuit Court [ECF No. 1-11]; (9) the June 28, 2024 letter from Plaintiff's counsel to the City regarding the Second Stop Work Order [ECF No. 1-12]; (10) the July 26, 2024 letter from the City Attorney to Plaintiff's counsel [ECF No. 1-13]; (11) the City's brief in response filed in the Eastern District of Missouri [ECF No. 1-14]; (12) the March 11, 2025 opinion of the Missouri Court of Appeals [ECF No. 1-15]; (13) the March 17, 2025 letter from the City to Plaintiff's counsel regarding the Second Stop Work Order ("Third Stop Work Order") [ECF No. 1-16]; and (14) the April 30, 2025 letter from the City Attorney to Plaintiff's counsel [ECF No. 1-17].

"Development") on the Property.[2] [ECF No. 1 ¶ 19] On December 15, 2021, the City's Board of Alderman approved the Conditional Use Application and the Planned Unit Development-Area Plan Application. [ECF No. 1-4] The City's Old Town Historic District approved the elevations for the Development and issued a Certificate of Appropriateness on April 7, 2022. [ECF No. 1 ¶ 20, 1-4]

In April 2022, Plaintiff submitted its Planned Unit Development-Final Plan ("Final Plan") Application for the Development to the City. [ECF No. 1 ¶ 21] On May 18, 2022, the City's Board of Aldermen approved the Final Plan through its adoption and passage of Ordinance No. 2008. [ECF No. 1 ¶ 22, 1-4]

On June 10, 2022, the City and Plaintiff entered into a Planned Unit Development Agreement ("Development Agreement"). [ECF No. 1, ¶ 27, 1-5] In the Development Agreement, Plaintiff agreed to "comply with the applicable terms and provisions of the Municipal Code" and the City agreed to issue building permits in a timely manner or enumerate in writing why such permits could not be issued so that Plaintiff could efficiently pursue completion of the Development within the established time frame. [ECF Nos. 1, ¶ 27, 1-5] On September 29, 2022, Plaintiff submitted a building permit application to the City. [ECF No. 1 ¶ 29] The City approved Plaintiff's construction plans for the Development and, on November 7, 2022, issued a building permit. [ECF No. 1 ¶¶ 30, 32] After issuance of the building permit and through May 15, 2023, Plaintiff began working on the Development, including surveying the property, locating utilities, clearing trees, and boring holes to monitor soil compaction. [ECF No. 1 ¶ 33, 1-9, 1-15]

Plaintiff alleges the Development "caused some consternation among a small number of

[2] Plaintiff acquired the property in 2021 for the purpose of constructing a mixed-use development on the property. [ECF No. 1 ¶ 18] The prior owner of the property began the development process, with the City approving a Conditional Use Application and Planned Unit Development Area Application in August 2021, and the City's Old Town Historic District issuing a Certificate of Appropriateness in October 2021. [ECF No. 1-9]

residents in the City[,]" that Defendants Colombatto and Gnau were motivated to run for aldermen positions in substantial part by the City's approval of the Development, and that Defendants Colombatto and Gnau won their races. [ECF No. 1, ¶¶ 35-41] Plaintiff further alleges that on May 17, 2023, the "Aldermen Defendants held a secret, closed meeting with [Defendants] Francis and Ronkoski, and potentially others, where they voted to instruct Francis and Ronkoski, to issue a stop work order to Plaintiff[.]" [ECF No. 1, ¶ 43]

On May 19, 2023, the City, through Defendants Francis and Ronkoski, issued a stop work order to Plaintiff prohibiting all construction on the Property (the "First Stop Work Order"). [ECF No. 1 ¶ 47, 1-7] The City's basis for issuing the First Stop Work Order was that Plaintiff had not begun construction within one year after approval of the Final Plan as required by Section 405.390(C) of the Municipal Code.[3] [ECF No. 1-7] Plaintiff appealed the issuance of the First Stop Work Order to the City's Board of Adjustment, which held a hearing. [ECF No. 1 ¶¶ 48-49]

On July 21, 2023, the Board of Adjustment issued its findings of fact and conclusions of law denying Plaintiff's appeal of the First Stop Work Order. [ECF Nos. 1 ¶ 50, 1-8] As part of its decision, the Board of Adjustment adopted the bases set forth in the First Stop Work Order, that Plaintiff failed to begin construction within one year of the Board of Alderman's approval of the Final Plan as required by Section 405.390(C) of the City's Municipal Code. [ECF No. 1 ¶ 51] The Board of Adjustment found Plaintiff's activities of clearing the site; boring holes for monitoring soil compaction; staking the site; delivering custom made plates, iron pipes, and scree to the Property; and placing a job board on the Property, did not qualify as "construction" within the meaning of the Municipal Code. [ECF No. 1-8]

Additionally, the Board of Adjustment determined that the First Stop Work Order was

[3] Section 405.390(C) provides, in pertinent part, that a Planned Unit Development Final Plan "shall expire and be of no effect one (1) year after the date of approval unless construction is begun and diligently pursued in accordance with the approved plan." [ECF Nos. 1-8, 1-9, 1-15]

legally valid because Plaintiff's Conditional Use Permit and Certificate of Appropriateness had expired. [ECF Nos. 1 ¶ 52, 1-8] Specifically, the Board of Adjustment found Plaintiff's December 2021 Conditional Use Permit expired because it required Plaintiff to obtain a building permit by June 13, 2022, pursuant to Section 400.130(G)(1) of the City's Municipal Code,[4] but Plaintiff did not obtain a building permit until November 7, 2022. [ECF Nos. 1, ¶ 52, 1-8] Further, the Board of Adjustment concluded Plaintiff's April 2022 Certificate of Appropriateness expired because it required Plaintiff to commence construction by October 7, 2022, pursuant to Section 405.135(C) of the City's Municipal Code,[5] which was prior to Plaintiff procurement of a building permit in November 2022. [ECF Nos. 1, ¶ 52, 1-8]

On August 18, 2023, Plaintiff filed a petition for writ of certiorari in the Circuit Court of St. Charles County, Cause No. 2311-CC00860, challenging the Board of Adjustment's decision. [ECF No. 1 ¶ 53] On April 17, 2024, the circuit court issued its judgment finding the First Stop Work Order to be "null and void" and reversing the Board of Adjustment's decision. [ECF No. 1 ¶ 54] The circuit court found Plaintiff's activities up until May 15, 2023 constituted "construction" within the meaning of the City's Municipal Code. [ECF Nos. 1-9] The circuit court held "the City was not authorized to issue the [First] Stop Work Order pursuant to P.U.D. Ordinance §405.400

[4] Municipal Code Section 400.130(G)(1) states:

(1) No conditional use permitted granted by the Board of Aldermen shall be valid for a period longer than one hundred eighty (180) days from the date of the granting of the conditional use permit by the Board of Aldermen, unless within such period:

a. A building permit is obtained and the erection or alteration of the real property and related structures, if any, is commenced; or

b. The use lawfully commenced.

[ECF No. 1-8]

[5] Municipal Code Section 405.135(C) states:

A certificate of appropriateness shall become void unless construction is commenced within six (6) months of date of issuance or otherwise extended by the [Old Town Historic District Commission].

[ECF No. 1-8]

to prevent [Plaintiff] from continuing construction of the [Development]" because Plaintiff began construction before the Final Plan expired. [ECF Nos. 1-9, No. 1, ¶¶ 64, 66]

On April 23, 2024, the City, through Defendant Padella as the City Administrator, issued another stop work order (the "Second Stop Work Order") prohibiting Plaintiff from engaging in any construction on the Development. [ECF No. 1 ¶ 56, 1-10] The City's stated bases for issuing the Second Stop Work Order were: (1) the expiration of Plaintiff's Conditional Use Permit for failing to obtain a building permit by June 13, 2022 as required by §400.130(G)(1) of the City's Municipal Code, and (2) the expiration of Plaintiff's Certificate of Appropriateness for failing to begin construction by October 7, 2022 as required by §405.135(C) of the City's Municipal Code. [ECF Nos. 1, ¶60-63; 1-10] The order states, "[t]o correct such deficiencies, [Plaintiff] may apply for a newly issued conditional use permit and certificate of appropriateness under the process and procedures provided for in the Code." [ECF No. 1-10]

On April 26, 2023, the City appealed the circuit court's judgment. [ECF No. 1 ¶ 70] While the appeal was pending, counsel for Plaintiff wrote to Defendant Padella and asserted that the Second Stop Work Order was illegal because it was supported by bases previously raised by the City with the Board of Adjustment and rejected by the circuit court. [ECF No. 1 ¶ 71] Counsel for the City responded that Plaintiff was prohibited from working on the Development because the City's appeal operated as an automatic stay of execution of the judgment and the two issues raised in the Second Stop Work Order were not resolved by the Board of Adjustment's decision or by the circuit court's judgment. [ECF No. 1 ¶¶ 73, 75]

On March 11, 2025, the Court of Appeals for the Eastern District of Missouri also reversed the Board of Adjustment's decision upholding the First Stop Work Order. [ECF Nos. 1 ¶ 80, 1-15] Specifically, the Court of Appeals held that Plaintiff began construction, within the meaning of Section 405.390(C), of the Development within one year of the City's approval of the Final Plan

and, thus, the Final Plan had not expired. [ECF No. 1-15]

On March 17, 2025, Defendant Padella for the City wrote a letter to Plaintiff reaffirming that the Second Stop Work Order was in effect, prohibiting Plaintiff from engaging in any further construction on the Development, and threatening criminal prosecution if Plaintiff violated the Second Stop Work Order (the "Third Stop Work Order"). [ECF No. 1 ¶¶ 84, 86, 1-16] The letter advised Plaintiff to obtain a new Conditional Use Permit and Certificate of Appropriateness prior to recommencing work. [ECF No. 1-16] On April 30, 2025, the City rescinded the Second Stop Work Order. [ECF No. 1 ¶ 94] However, due to changing market conditions, Plaintiff asserts it is unable to secure financing or construct the Development for a profit. [ECF No. 1 ¶ 97-100]

Plaintiff filed its complaint against Defendants pursuant to Section 1983 alleging: (1) violations of its Fourteenth Amendment substantive due process rights and (2) a taking in violation of the Federal and Missouri Constitutions. [ECF No. 1] In Count I, Plaintiff alleges it has a constitutionally protected property interest in the Final Plan for the Development approved by the City and in the City's compliance with the Development Agreement. [ECF No. 1, ¶ 115] Plaintiff asserts that the City's issuance of the Second Stop Work Order was irrational, undertaken with full knowledge its action was illegal, and purposefully stripped Plaintiff of its constitutionally protected property rights. [ECF No. 1] Plaintiff asserts the Individual Defendants acted with deliberate indifference and intentional disregard of Plaintiff's property rights and right to due process. [ECF No. 1]

In Count II, Plaintiff asserts Defendants issuance of the Second and Third Stop Work Orders constituted a taking of Plaintiff's property under the Missouri Constitution. [ECF No. 1] Plaintiff further contends that Defendants issuance of the Second Stop Work Order was a *per se* physical taking in violation of the Fifth and Fourteenth Amendments of the United States Constitution because it appropriated Plaintiff's right to enter its own property and perform

approved construction of the Development. [ECF No. 1] Plaintiff again asserts the Individual Defendants acted with deliberate indifference and intentional disregard of Plaintiff's property rights. [ECF No. 1]

## II. Legal Standard

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of a complaint. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2006)). A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering a motion to dismiss for failure to state a claim, the reviewing court must accept the plaintiff's factual allegations as true and construe them in the plaintiff's favor. *Id.* However, the court need not accept legal conclusions cast in the form of factual allegations, such as "formulaic recitation[s] of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Id.* (citing *Twombly*, 550 U.S. at 556). Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*

## III. Discussion

### A. Plaintiff's Request to Amend its Complaint

In response to Defendant's motion to dismiss, Plaintiff requested leave to amend its complaint if "the Court determines that Plaintiff has failed to plead the necessary factual allegations." [ECF No. 41, pg. 2] While leave to amend is ordinarily freely granted under Federal Rule of Civil Procedure 15, Plaintiff has not filed a motion for leave to amend or submitted a proposed amended complaint. *See Clayton v. White Hall School Dist.*, 778 F.2d 457, 460 (8th Cir.

1985). Accordingly, Plaintiff's request for leave to amend is denied without prejudice.

B. Substantive Due Process

Count I of Plaintiff's complaint alleges denial of Plaintiff's Fourteenth Amendment substantive due process and seeks relief under 42 U.S.C. § 1983. [ECF No. 1] Plaintiff alleges it has a "constitutionally protected property interest" in the Final Plan for the Development approved by the City and in the City's compliance with the Development Agreement. [ECF No. 1] Specifically, Plaintiff alleges it has "a property right in connection with constructing the Development in accordance with the City's prior approvals" and the City "granted Plaintiff the right to construct the Development" through: (1) its enactment of Ordinance No. 2008 approving the Final Plan; (2) the City and Plaintiff's execution of the Development Agreement "whereby the City agreed to issue building permits and other authorizations needed by Plaintiff in connection with constructing the Development[,]" and (3) the City's approval of Plaintiff's construction plans and issuance of a building permit. [ECF Nos. 1 & 41]

With respect to Defendants' violation of that right, Plaintiff alleges that the City's issuance of the Second and Third Stop Work Orders was truly irrational because it was "done with full knowledge that doing so was illegal and was done for the deliberate purpose of stripping Plaintiff of its constitutionally protected property rights." [ECF No. 1] Specifically, Plaintiff asserts the Defendants' actions were truly irrational because the Second and Third Stop Work Orders relied upon bases "expressly overturned" by courts and Defendants knew they "were collaterally estopped from re-litigating" any of the issues identified by the Board of Adjustment as grounds for its decision after courts reversed that decision. [ECF No. 1]

In their motions to dismiss, Defendants assert Plaintiff's complaint fails to state a claim because "state law zoning issues are not actionable under §1983" as they do not rise to the level of a substantive due process violation. [ECF Nos. 19, 23, 25, 27, 31, 35 & 37] Specifically,

Defendants contend that Plaintiff does not have a constitutionally protected property interest in the Final Plan and Defendants actions were not truly irrational. [ECF Nos. 19, 23, 25, 27, 31, 35 & 37]

Section 1983 "establishes no substantive rights; it is merely a vehicle for seeking a federal remedy for violations of federally protected rights." *Foster v. Wyrick,* 823 F.2d 218, 221 (8th Cir.1987) (citing *Irby v. Sullivan,* 737 F.2d 1418, 1427–28 (5th Cir.1984)). "Substantive rights created by the United States Constitution or by federal statutes may generally be asserted in a § 1983 action." *Foster,* 823 F.2d at 221.

The Fourteenth Amendment due process clause prohibits state governments from depriving "any person of life, liberty or property, without due process of law ..." U.S. Const. amend. XIV, § 1. To prevail on a Fourteenth Amendment substantive due process claim, the plaintiff must establish a constitutionally protected right and that the government action deprived the plaintiff of that right. *Creason v. City of Washington*, 435 F.3d 820, 824–25 (8th Cir. 2006); *Novotny v. Tripp Cnty., S.D.*, 664 F.3d 1173, 1178 (8th Cir. 2011). "To meet [this] burden [the party] must demonstrate that the government action complained of is truly irrational, that is something more than ... arbitrary, capricious, or in violation of state law." *Creason*, 435 F.3d at 824–25 (quoting *Klein v. McGowan,* 198 F.3d 705, 710 (8th Cir.1999)).

Plaintiff's complaint baldly asserts that it has a "constitutionally protected property interest in the Final Plan for the Development and in the City's compliance with the [Development] Agreement." [ECF No. 41] Despite Defendants challenging the existence of a constitutionally protected property right in their motions to dismiss, Plaintiff provides no analysis in response, instead simply repeating that it has a property interest protected by the Fourteenth Amendment based on "the City's prior approvals" through enactment of the Ordinance No. 2008, the City's issuance of a building permit, and the execution of the Development Agreement "whereby the City

agreed to issue building permits and other authorizations needed by Plaintiff's in connection with constructing the Development." [ECF No. 41]

A protected property interest, however, is more than a "mere subjective expectancy." *Bituminous Materials, Inc. v. Rice County, Minn.,* 126 F.3d 1068, 1070 (8th Cir.1997). "Property interests are created and their dimensions defined by existing rules or understandings that stem from an independent source, such as state law, rules or understanding that support claims of entitlement to certain benefits." *Carolan v. City of Kansas City, Mo.*, 813 F.2d 178, 181 (8th Cir. 1987) (quoting *Littlefield v. City of Afton*, 785 F.2d 596, 600 (8th Cir. 1986)). In land use cases, the determination of whether state law created a property interest requires an assessment of the government's discretion in issuing a permit or denying an application and the applicant's compliance with the enumerated requirements for approval. *See Id.* ("state law creates a property interest in a building permit if the municipality, under state law or ordinance, lacks discretion and must issue a building permit to an applicant who complies with the statutory requirements *and* the applicant has fulfilled the requirements"); *Prewitt v. Camden Cnty., Mo.*, No. 09-04126-CV-C-NKL, 2010 WL 3927807, at *7 (W.D. Mo. Oct. 4, 2010) ("In the zoning context, a unilateral expectation of receiving approval for rezoning is insufficient to establish a legitimate claim of entitlement unless the land use authority lacks discretion to deny a particular application for rezoning under the applicable law.")

Here, Plaintiff provides no analysis or authority in support for its assertion that its interest in constructing the Development was constitutionally protected. In the absence of any such argument or support, the Court is unpersuaded that such right exists.[6]

---

[6] This is particularly true in this case, where the record suggests Plaintiff's less than full compliance with the City's zoning regulations. Plaintiff's claim relies on Defendants' alleged wrongful *reliance* on the expiration of Plaintiff's Conditional Use Permit and Certificate of Appropriateness in issuing the Second and Third Stop Work Orders. [ECF Nos. 1 and 41] Putting aside whether Defendants' reliance on these alleged violations was improper due to issue preclusion, which the Court will address shortly, Plaintiff does

Assuming *arguendo* that Plaintiff has a constitutionally protected property interest in pursuing the Development under the Final Plan, Plaintiff has failed to demonstrate Defendants violated that right. To prevail on a substantive due process claim, the plaintiff must establish that the government's action was "truly irrational." *Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104 (8th Cir. 1992); *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 628 (8th Cir. 2001). To be considered "truly irrational," governmental action must be "something more . . . than arbitrary, capricious, or in violation of state law." *Chesterfield Dev. Corp.*, 963 F.2d at 1104. Allegations of bad faith governmental action are, without more, insufficient to state a substantive due process claim. *Bituminous Materials, Inc.*, 126 F.3d at 1070.

In the complaint, Plaintiff alleges that the City's issuance of the Second and Third Stop Work Orders was "truly irrational" because they were "done with full knowledge that doing so was illegal and was done for the deliberate purpose of stripping Plaintiff of its constitutionally

---

not assert that, in fact, it possessed a valid, unexpired Conditional Use Permit or Certificate of Appropriateness as required by the City's Municipal Code when the Second and Third Stop Work Orders were issued.

The Final Plan specifically states that Plaintiff "will comply with the applicable terms and provisions" of the City's Municipal Code. [ECF No. 1-5] Thus, the record suggests that Plaintiff was not in compliance with the terms of the Final Plan when the Second and Third Work Orders were issued, undercutting Plaintiff's assertion that it had a constitutionally protected property interest in pursuing construction of the Development under the Final Plan at that time.

The Eighth Circuit's opinion in *Carolan v. City of Kansas City, Mo*, 813 F. 2d 178, 179 (8th Cir. 1987), is instructive. In *Carolan*, the city issued the plaintiffs a building permit to construct a restaurant. *Id.* The plaintiffs began construction but deviated from the building plan, adding a mezzanine. *Id.* When the plaintiffs sought an occupancy certificate prior to opening for business, the city issued only a temporary occupancy certificate contingent upon the plaintiffs not using the mezzanine. *Id.* The city denied the plaintiffs subsequent request for a permanent occupancy certificate because they lacked a valid building permit for the building as constructed with the mezzanine. *Id* at 180.

In their lawsuit, the plaintiffs argued they had a constitutionally protected property interest in the renewal of their temporary occupancy certificate. *Id.* The Eighth Circuit rejected this claim, finding the plaintiffs did not have a protected property interest in a permanent occupancy certificate because they failed to obtain a valid building permit, a prerequisite to securing a permanent occupancy permit. *Id.* at 181. Accordingly, Plaintiff's apparent failure to comply with the City's zoning ordinances as part of its Municipal Code, including the possession of a valid and unexpired Conditional Use Permit and Certificate of Appropriateness, undermines Plaintiffs contention that it had a constitutionally protected property interest in developing the Property under the Final Plan.

protected property rights." [ECF No. 1] Specifically, Plaintiff asserts Defendants actions were "truly irrational" because the Second and Third Stop Work Orders relied upon bases "expressly overturned" by the state courts and Defendants knew they "were collaterally estopped from re-litigating" any of the issues identified by the Board of Adjustment as grounds for its decision after the state court decisions reversing the Board of Adjustment. [ECF No. 1]

Defendants argue Plaintiff's substantive due process claim arises from the interpretation and application of municipal zoning ordinances, specifically whether Plaintiff timely began construction and whether various permits had expired. [ECF Nos. 19, 23, 25, 27, 31, 35 & 37] Defendants assert these are "quintessential state-law zoning questions" that bear no resemblance to "truly irrational" conduct. [ECF Nos. 19, 23, 25, 27, 31, 35 & 37] Plaintiff responds that Defendants actions were "truly irrational" in that they "acted in violation of a court order and specifically make the same improper arguments" that were presented to and "struck down" or rejected by the state courts. [ECF No. 41] Plaintiff argues the basis of its claim is that Defendants actions were "truly irrational, and rise to the level of a constitutional violation[,]" in that they prevented Plaintiff from developing the Property under false pretenses and "in contravention of multiple court orders advocating failed legal arguments to issue the Second and Third Stop Work Orders." [ECF No. 41]

Plaintiff's complaint fails to allege sufficient facts demonstrating "truly irrational" conduct by Defendants. Plaintiff's claim is based predominantly on its assertion that Defendants' reliance on the expiration of Plaintiff's Conditional Use Permit and Certificate of Appropriateness in issuing the Second and Third Stop Work Orders was "illegal" and in contravention of the state court judgments overturning the Board of Adjustment's decision upholding the First Stop Work Order. Despite Plaintiff's reliance on the alleged preclusiveness of the state court judgments, Plaintiff does not present any argument or authority in support of its collateral estoppel argument.

Missouri's law of collateral estoppel governs the preclusive effect of state court decisions. *See Baker v. McCoy*, 739 F.2d 381, 384 (8th Cir. 1984). Collateral estoppel of a prior adjudication applies when four factors are satisfied:

> (1) is the issue in the present case identical to the issue decided in the prior adjudication; (2) was there a judgment on the merits in the prior adjudication; (3) is the party against whom collateral estoppel is asserted the same party or in privity with a party in the prior adjudication; and (4) did the party against whom collateral estoppel is asserted have a full and fair opportunity to litigate the issue in the prior suit. The doctrine applies only to those issues that were necessarily and unambiguously decided.

*State ex rel. Johns v. Kays*, 181 S.W.3d 565, 566 (Mo. 2006). *See also Cooperative Home Care, Inc. v. City of St. Louis*, 514 S.W.3d 571, 581 (Mo. 2017).

Plaintiff's repeated assertions that the bases of the Second and Third Stop Work Orders, namely the expiration of Plaintiff's Conditional Use Permit and Certificate of Appropriateness, were "failed legal arguments" that were "expressly overturned" by the Circuit Court of St. Charles County and the Missouri Court of Appeals is not supported by the record. The state courts overturned the Board of Adjustment's denial of Plaintiff's appeal of the First Stop Work Order and concluded the First Stop Work Order was not authorized by law based solely on their determination that the Final Plan had not expired under Section 405.390(C) of the Municipal Code because Plaintiff began construction within one year of the Final Plan's issuance. [ECF No. 1-15]

Neither court addressed the expiration of Plaintiff's Conditional Use Permit or Certificate of Appropriateness in overturning the Board of Adjustment's decision or in reviewing the propriety of the First Stop Work Order, presumably because the expiration of these permits were not a ground for issuing the First Stop Work Order. Again, collateral estoppel "applies only to those issues that were necessarily and unambiguously decided" and neither state court made any explicit finding regarding the expiration of Plaintiff's Conditional Use Permit or Certificate of Appropriateness. See *State ex rel. Johns v. Kays*, 181 S.W.3d 565, 566 (Mo. 2006). Plaintiff

provides no analysis or argument in support of a finding that issues are precluded by a state court judgment which that does not address the issues.[7]

Without the bar of collateral estoppel, Defendants' actions amount to issuance of stop work orders based on the expiration of Plaintiff's Conditional Use Permit and Certificate of Appropriateness, both requirements of the City's Municipal Code, which in turn is a requirement under the Final Plan. These actions fall squarely within the category of code enforcement. Absent more egregious conduct, Plaintiff's allegations of ill intent or political motivations does not alter the nature of these actions as code enforcement or create a constitutional violation. *Bituminous Materials, Inc.*, 126 F.3d at 1070 (allegations of bad faith governmental action are, without more, insufficient to state a substantive due process claim). Again, Plaintiff has not argued that these

[7] It is possible that the state courts did not address the validity of Plaintiff's Conditional Use Permit and Certificate of Appropriateness due to Plaintiff's position in those courts. Plaintiff states that Defendants should be precluded from raising the expiration of these permits as a basis for the Second and Third Stop Work Orders because Defendants raised them as bases to affirm the Board of Adjustment's determination in both the state circuit and appellate courts. Plaintiff attached to its complaint copies of Defendants' briefs filed in those courts. [ECF Nos. 1-11, 1-14].

Plaintiff did not provide the Court with copies of its filings. In ruling on a motion to dismiss, however, the Court "may sua sponte take judicial notice of proceedings in other courts if they relate directly to the matters at issue[.]" *Zerger & Mauer LLP v. City of Greenwood*, 751 F.3d 928, 935 (8th Cir. 2014) (quoting *Conforti v. United States,* 74 F.3d 838, 840 (8th Cir.1996).

Plaintiff's Brief in Support of Judgment filed in support of its Verified Petition for Writ of Certiorari in the St. Charles County Circuit Court repeatedly argued that the court should not consider the validity of Plaintiff's Conditional Use Permit and Certificate of Appropriateness in determining the propriety of the First Stop Work Order. *See Harmony Pointe, LLC v. City of Cottleville, Missouri et al*, 2311-CC00860, Petitioner's Brief in Support of Judgment on Its Verified Petition for Writ of Certiorari, filed December 1, 2023. In this filing, Plaintiff asserted that the First Stop Work Order "must be evaluated on its face, and the City is not allowed to raise issues or arguments not raise by the Stop Work Order" and "[i]t must be emphasized, to avoid City attempting to raise new alleged bases for killing the project, that the May 19, 2023 Letter…is the only Stop Work Order at issue and that Stop Work order stated one basis and that being, 'Because construction had not begun on the Project and the final plan had expired.' That is the only notice Plaintiff received and that is the only basis properly taken by the BOA and reviewed by this Court."

Plaintiff's position that Defendants were collaterally estopped from subsequently raising the expiration of the permits because these bases were "expressly overturned" by the state courts when, in fact, they were not addressed by the courts after Plaintiff argued those bases could not be considered is unavailing.

Irrespective of Plaintiff's position in the state courts, neither of the courts addressed these alternative bases in their decisions nor explained why they did not do so.

permits were not expired and that the underlying bases of the Second and Third Stop Work Orders were unfounded other than on the basis of collateral estoppel.[8]

Further, even if it could be said that Defendants' issuance of the Second and Third Stop Work Orders were "illegal" as characterized by Plaintiff, Plaintiff has failed to allege sufficient facts to support a finding that Defendants actions were "truly irrational" because "[t]o be considered truly irrational, governmental action must be "something more . . . than arbitrary, capricious, or in violation of state law." *Chesterfield Dev. Corp.*, 963 F.2d at 1104.

Plaintiff compares Defendants' decisions to the hypothetical example of a "truly irrational" decision described in *Chesterfield Dev. Corp.*, in which a zoning ordinance is applied only to persons whose names begin with a letter in the first half of the alphabet. [ECF No. 1 ¶ 7] The zoning ordinance in the hypothetical example is "truly irrational" because there is no possible rational basis for unequal treatment of persons based on the first letter of their name. The same cannot be said of Defendants' conduct. Defendants' Stop Work Orders contained bases for their decision, specifically code violations, that distinguish it from the hypothetical example of truly irrational governmental action in *Chesterfield Dev. Corp.* Even if the stop work orders were supported by factually erroneous and bad faith assertions, they are not analogous to the hypothetical in *Chesterfield Dev. Corp.*, in which there was no basis for the government action whatsoever. 963 F.2d at 1104.

Instead, Defendants' stop work orders are more analogous to the enforcement of an invalid zoning ordinance, which the Eighth Circuit has held would not be "truly irrational" even if

---

[8] Plaintiff's counsel's letter to the City on June 28, 2024, while not explicitly acknowledging that Plaintiff did not currently possess a valid Conditional Use Permit or Certificate of Appropriateness, appears to acknowledge that Plaintiff did not. [ECF No. 1-12] Specifically, in response to the City's suggestion that Plaintiff reapply for those permits, counsel stated that Plaintiff would only do so if the City intends to "swiftly approv[e] any of the aforementioned applications [Plaintiff] submits." [ECF No. 1-12]

enforced in bad faith and in violation of state law. *Id.* at 1105. If mere violations of state law constituted denial of substantive due process, "every violation of state law could be turned into a federal constitutional tort." *Id.* at 1104. Plaintiff has failed to facts that provide a basis for this Court to draw a reasonable inference that Defendants' conduct was "more . . . than arbitrary, capricious, or in violation of state law." *Id.* Accordingly, the Court grants Defendants' motions to dismiss Count I of Plaintiff's complaint.

C. Takings Clauses

In Count II, Plaintiff alleges Defendants issuance of the Second Stop Work Order was a *per se* physical taking in violation of the Fifth and Fourteenth Amendments of the United States Constitution because it appropriated Plaintiff's right to enter its own property and perform approved construction of the Development. [ECF No. 1] Plaintiff further alleges Defendants issuance of the Second and Third Stop Work Orders was a taking of Plaintiff's property under the Missouri Constitution. [ECF No. 1]

Defendants contend Plaintiff's Fifth Amendment takings claim fails because Plaintiff has not alleged a *per se* physical taking as a matter of law. [9] [ECF Nos. 19, 23, 25, 27, 31, 35 & 37] Specifically, Defendants contend the stop work orders did not grant outsiders the right to enter or occupy Plaintiff's property and, thus, do not constitute a *per se* physical taking under the Fifth Amendment. [ECF Nos. 36 & 37] Individual Defendants further contend that the Court must dismiss Plaintiff's takings claim against them in their individual capacity must be dismissed

[9] Defendants raise numerous alternative arguments, including that: (1) Plaintiff fails to plead a compensable regulatory taking under the United States constitution; (2) if Plaintiff's claims are construed as a procedural due process claim they are barred by Plaintiff's failure to exhaust administrative remedies; and (3) if Plaintiff's claims are construed as an as-applied constitutional challenge the claims are not ripe. [ECF Nos. 18, 22, 24, 26, 30, 34 & 36] Based on the Court's resolution regarding the substantive due process and takings claims, the Court does not address Defendants alternative arguments.

because takings claims may only be brought against government entities. [ECF Nos. 18, 22, 24, 26, 30, & 34] Defendants further contend that if Plaintiff's federal claims in Count I and II are dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiff's takings claim under the Missouri Constitution, arguing the case does not present exceptional circumstances warranting the Court's continued exercise of jurisdiction. [ECF Nos. 18, 22, 24, 26, 30, 34 & 36]

In response to Defendants' motions to dismiss, Plaintiff counters that the Second and Third Stop Work Orders constitute a compensable regulatory taking under the United States Constitution. [ECF No. 41] Plaintiff does not address the issue of *per se* physical takings under the United States Constitution, Defendants' argument regarding the Court's exercise of supplemental jurisdiction, or Individual Defendants' argument that only governmental entities can be held liable for a taking. [ECF No. 41]

1. United States Constitution

Count II of Plaintiff's complaint alleges that Defendants' issuance of the Second Stop Work Order was a "*per se* physical taking in violation of the Fifth and Fourteenth Amendment of the United States Constitution[.]" [ECF. No. 1 ¶ 123-125] Specifically, Plaintiff alleged Defendants' actions constituted a *per se* physical taking under the United States Constitution because "it appropriates Plaintiff's right to enter its own property and perform approved construction of the Development. *Cedar Point Nursery, v. Hassid,* 594 U.S. 139, 149 (2021)." [ECF No 1, ¶ 125]

Government regulation constitutes a *per se* physical taking when it "results in a physical appropriation of property." *Cedar Point Nursery, v. Hassid,* 594 U.S. 139, 149 (2021). A *per se* physical taking has occurred when a regulation appropriates a property owner's right to exclude. *See id.* Defendant's Second Stop Work Order did not physically appropriate Plaintiff's property nor his right to exclude. Plaintiff has failed to plead factual content that would allow the Court to

draw a reasonable inference that a *per se* physical taking has occurred.

In response to the motions to dismiss, Plaintiff acknowledges that physical and regulatory takings are governed by separate analysis, and abandons its claim of a *per se* physical taking under the Federal Constitution, instead asserting it alleged sufficient facts to sustain a claim for a regulatory taking under the Federal Constitution. [ECF No. 41] Plaintiff, however, did not bring a Federal constitutional regulatory takings claim in its complaint.

Further, Plaintiff has failed to state a federal takings claim against the Individual Defendants. "The Takings Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, prohibits the government from taking private property for public use without just compensation." *Gibbs v. City of Sikeston*, No. 1-23-cv-00006-SNLJ, 2025 WL 2096522, at *12 (E.D. Mo. July 25, 2025) (quoting *Cedar Point Nursery*, 594 U.S. at 147; U.S. Const. amend. V). Takings claims may only be brought against government entities. *Id.* (citing *Glow In One Mini Golf, LLC v. Walz*, 37 F.4th 1365, 1375 (8th Cir. 2022) (noting that "Supreme Court cases only contemplate government entities—not individual government officials—providing just compensation").

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's federal *per se* physical taking claim raised in Count II.

2. Missouri Constitution

Defendants request that the Court decline supplemental jurisdiction over Plaintiff's state takings claims in light of the Court's dismissal of all of Plaintiff's federal claims. [ECF No. 36 ¶¶ 3-5] The Court has "broad discretion in determining whether to exercise supplemental jurisdiction." *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011) (citing *Green v. Ameritrade, Inc.*, 279 F.3d 590, 599 (8th Cir. 2002)). However, the court must consider the four factors enumerated in 28 U.S.C. § 1367(c). *Hunter v. Page County, Iowa,* 102 F.4th 853, 870 (8th

Cir. 2024) (citing *Wong v. Minn, Dep't of Hum. Servs.*, 820 F.3d 922, 933 (8th Cir. 2016)). Section 1367's four factors are: (1) whether "the claim raises a novel or complex issue of State law," (2) whether the state claim "substantially predominates" over federal claims, (3) whether "the district court has dismissed all claims over which it has original jurisdiction," and (4) whether "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). The Supreme Court has articulated four interests that underlie § 1367(c)- "comity, fairness, judicial economy, and convenience." *Hunter*, 102 F.4th at 870 (citing *Marianist Province of U.S. v. City of Kirkwood*, 944 F.3d 996, 1003 (8th Cir. 2019)). In considering whether to exercise supplemental jurisdiction, the Court must construe the four factors enumerated in § 1367(c) in light of the four interests identified by the Supreme Court. *Id.* (citing *McLaurin v. Prater*, 30 F.3d 982, 985 (8th Cir. 1994)).

If a state claim "raises a novel or complex issue of State law," the Court "may decline to exercise supplemental jurisdiction . . ." 28 U.S.C. § 1367(c). Missouri courts apply federal takings jurisprudence in the resolution of takings claims arising out of the Missouri Constitution. *See, e.g., Reagan v. County of St. Louis*, 211 S.W.3d 104, 107-11 (Mo. Ct. App. 2006) (applying *Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978)). Therefore, Plaintiff's state taking claim does not raise a novel or complex issue of state law. The absence of a novel or complex issue of state law weighs in favor of the Court exercising supplemental jurisdiction. However, it is not dispositive.

If a state claim "substantially predominates over the claim or claims over which the district court has original jurisdiction," or the court "has dismissed all claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction . . ." 28 U.S.C. § 1367(c). The Court has dismissed all of Plaintiff's claims over which it has original jurisdiction. Consequently, there are no federal claims over which Plaintiff's state claim may predominate. The dismissal of

Plaintiff's federal claims and the consequent absence of any federal claims over which Plaintiff's state claim may predominate weighs in favor of the Court declining supplemental jurisdiction.

The Court may decline to exercise supplemental jurisdiction if "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). There are no exceptional circumstances in this case which weigh in favor of either exercising supplemental jurisdiction or declining it. However, this factor allows the court "to consider the underlying interests the Supreme Court has articulated: comity, fairness, judicial economy, and convenience." *Hunter*, 102 F.4th at 872 (citing *Marianist Province*, 944 F.3d at 1003). Allowing state courts to adjudicate Plaintiff's state claim by declining supplemental jurisdiction promotes comity between federal and state courts. Moreover, it would not be unfair to decline supplemental jurisdiction when Plaintiff may file its state claim in state court or refile in federal court with an amended federal claim. Declining supplemental jurisdiction at this early stage promotes judicial economy. There is a relatively low investment of judicial resources at the motion to dismiss stage. It may be more convenient for one or more of the parties if the Court exercises supplemental jurisdiction, but the other interests articulated by the Supreme Court weigh in favor of declining supplemental jurisdiction. Accordingly, the Court declines supplemental jurisdiction over Plaintiff's state takings claims.

## IV. Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' motions to dismiss [ECF Nos. 18, 22, 24, 26, 30, 34 & 36] are **GRANTED** and this case is **DISMISSED without prejudice**. A separate order of dismissal will accompany this Memorandum and Order.

Patricia L. Cohen

PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of September, 2026